# United States Court of Appeals
## For the First Circuit

No. 19-2175

CLAUDE MARY LUISTILUS BONNET,

Petitioner,

v.

MERRICK B. GARLAND,[*]
UNITED STATES ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Kayatta and Barron, Circuit Judges.
Talwani,[**] District Judge.

Julia Ciachurski,[***] with whom Mary P. Holper, Peter Alfredson, and Boston College Legal Services LAB, Immigration Clinic were on brief, for petitioner.
Tim Ramnitz, Attorney, Office of Immigration Litigation, Civil Division, with whom Bryan Boynton, Acting Assistant Attorney General, Civil Division, and Shelley R. Goad, Assistant Director, Office of Immigration Litigation, were on brief, for respondent.

---

[*] Pursuant to Fed. R. App. P. 43(c)(2), Attorney General Merrick B. Garland has been substituted for former Attorney General William P. Barr as the respondent.

[**] Of the District of Massachusetts, sitting by designation.

[***] On July 27, 2021, the Court granted leave for Julia Ciachurski, a recent law school graduate, to participate in oral argument pursuant to 1st Cir. R. 46.0(f)(1)(B).

December 13, 2021

**BARRON**, <u>Circuit Judge</u>. Claude Mary Luistilus Bonnet, a native and citizen of Haiti, petitions for review of an order of the Board of Immigration Appeals ("BIA") that affirms the denial of his application for protection under the Convention Against Torture ("CAT"). We deny the petition.

## I.

Bonnet immigrated to the United States as a legal permanent resident in 1999, when he was sixteen years old. In December 2017, Bonnet pleaded guilty in Massachusetts state court to multiple counts of possession with intent to distribute Class B and Class E controlled substances. He was sentenced to six months of incarceration.

Subsequently, the Department of Homeland Security ("DHS") issued Bonnet a Notice to Appear that alleged that he was subject to removal under Sections 237(a)(2)(A)(iii) and (B)(i) of the Immigration and Nationality Act ("INA") due to his conviction for possession to distribute a Class E substance, <u>see</u> 8 U.S.C. § 1227(a)(2). Bonnet, proceeding pro se, filed a Form I-589 application for asylum, withholding of removal, and protection under the CAT.

An Immigration Judge ("IJ") held a hearing on the merits of the claims on July 13, 2018, at which Bonnet and certain of his family members testified. Following the hearing, the IJ issued an oral decision that denied Bonnet the relief that he requested on

his claims.  The IJ found that Bonnet was statutorily ineligible for asylum and withholding of removal because his conviction for possession of a Class E substance with intent to distribute was a conviction of a "particularly serious crime," see 8 U.S.C. § 1158(b)(2)(B)(i).  The IJ also denied Bonnet's claim for protection under the CAT because it concluded both that Bonnet did "not fear anyone in particular," and that he had not brought forward sufficient evidence to demonstrate that he was entitled to protection under the CAT.

Bonnet appealed the IJ's ruling to the BIA.  Bonnet's conviction for possession with intent to distribute a Class E substance was vacated while the appeal was pending.  The BIA granted Bonnet's unopposed motion to remand on December 6, 2018, because he had only been found removable based on that conviction.

Bonnet was issued an amended Notice to Appear on February 6, 2019.  The Notice to Appear alleged that Bonnet was removable due to his conviction for possession with intent to distribute a Class B substance, see 8 U.S.C. § 1227(a)(2)(A)(iii), (B)(i).

Bonnet, now represented, submitted an Amended Form I-589.  At a master calendar hearing in front of the IJ on February 20, 2019, Bonnet represented that he would present new evidence that was unavailable when he proceeded pro se in responding to his earlier Notice to Appear based on the now-vacated conviction.

- 4 -

Bonnet subsequently submitted a declaration from Dr. Chelsey Kivland, an anthropologist at Dartmouth College. The declaration concerned the treatment in Haiti of criminal deportees to that country.

The IJ then held a merits hearing on April 9, 2019. The IJ admitted Kivland as an expert without objection from the government. She testified about conditions in Haiti.

The IJ denied Bonnet's application for asylum, withholding of removal, and protection under the CAT. Bonnet appealed to the BIA, which adopted and affirmed the IJ's decision, while offering its own reasoning in support of its ruling.

Bonnet timely filed this petition for review.[1] The petition challenges only the denial of his request for protection under the CAT.

## II.

To make out a CAT claim, a petitioner must show "that it is more likely than not that he will be tortured if returned to

---

[1] Soon thereafter, Bonnet filed a motion to stay his removal pending the resolution of this appeal. The motion was denied in an order relying on 8 U.S.C. § 1252(a)(2) and our decision in Conteh v. Gonzales, 461 F.3d 45 (1st Cir. 2006), which interpreted that statute to deprive us of jurisdiction to hear challenges to the factual conclusions underlying decisions denying applications for immigration relief by aliens who are removable by reason of an aggravated felony conviction, id. at 63. Between the denial of the stay and briefing to us, the Supreme Court decided Nasrallah v. Barr, 140 S. Ct. 1683 (2020), which interpreted § 1252(a)(2) differently and made clear that we do have jurisdiction to resolve Bonnet's petition, see id. at 1688.

his home country." Mazariegos v. Lynch, 790 F.3d 280, 287 (1st Cir. 2015) (citing Romilus v. Ashcroft, 385 F.3d 1, 8 (1st Cir. 2004)). This requires the applicant to "offer specific objective evidence showing that he will be subject to: '(1) an act causing severe physical or mental pain or suffering; (2) intentionally inflicted; (3) for a proscribed purpose; (4) by or at the instigation of or with the consent or acquiescence of a public official who has custody or physical control of the victim; and (5) not arising from lawful sanctions.'" Romilus, 385 F.3d at 8 (emphasis omitted) (quoting Elien v. Ashcroft, 364 F.3d 392, 398 (1st Cir. 2004)); see also 8 C.F.R. § 208.18(a).

"When the BIA has adopted and affirmed the IJ's ruling, but has included discussion of some of the IJ's bases for decision, we review both the IJ's and BIA's opinions." Chanthou Hem v. Mukasey, 514 F.3d 67, 69 (1st Cir. 2008). We review the findings of fact below "under the 'substantial evidence' standard to determine if those findings are 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" Marroquín-Rivera v. Sessions, 861 F.3d 7, 9 (1st Cir. 2017) (quoting Ordonez-Quino v. Holder, 760 F.3d 80, 87 (1st Cir. 2014)). We review claims of legal error "de novo, 'subject to appropriate principles of administrative deference.'" Ordonez-Quino, 760 F.3d at 87 (quoting Larios v. Holder, 608 F.3d 105, 107 (1st Cir. 2010)).

- 6 -

Bonnet bases his CAT claim in part on the torture that he contends that he would be subject to in Haiti while "imprisoned" there as a criminal deportee, and we begin with his challenge to the denial of that aspect of his CAT claim. Bonnet advances numerous arguments in support of this challenge,[2] but the necessary premise for each of them is the same: that the IJ erred in finding -- or, at the least, that the BIA erred in affirming the IJ's finding -- that Bonnet had failed to show that it was more likely than not that he would be "detain[ed]" in Haiti.

This premise necessarily underlies each of Bonnet's arguments regarding this aspect of his CAT claim, because he relies with respect to it on Kivland's testimony regarding the likelihood that criminal deportees will be subjected to deliberate abuse in

_____

[2] Those contentions are that: (1) the IJ erroneously applied a heightened standard of proof by requiring him in effect to prove that "all Haitian prisoners are subjected to what amounts to torture"; (2) the IJ erred by discrediting Kivland's testimony that all Haitian prisoners are subject to acts of torture -- including a "very severe" form of ear boxing, aggressive head-shaving causing lacerations to the scalp, and beatings of genitalia -- and by prohibiting her, against its prior policy, from making that "reasonable inference"; (3) the BIA affirmed the finding that he was not likely to be tortured based on an erroneous determination that "a qualified expert's conclusions drawn from over 100 conversations with Haitian prisoners was insufficient to prove what would happen to Mr. Bonnet inside of a Haitian prison," a finding which was based in part on mischaracterizations of State Department reports; and (4) that the BIA erred by failing to distinguish his case from Matter of J-E-, 23 I. & N. Dec. 291 (BIA 2002), in which the BIA held that Haitian prison conditions, though appalling, did not constitute torture, id. at 301.

Haitian "jail and prisons," including treatment that may rise to the level of torture. Thus, if he cannot show that he would be detained in a jail or prison in Haiti, then her testimony about the treatment to which criminal deportees are subjected in Haitian jails or prisons cannot provide the support that he contends that it supplies.

We thus must review Kivland's testimony on this critical point. Kivland testified that upon their arrival in Haiti deportees "go through processing . . . by Haitian authorities." She described this "processing" as occurring "at the . . . airport or . . . a jail that is close to the airport." Kivland went on to explain in her testimony that, during "processing," criminal deportees are "fingerprinted, photographed and questioned regarding the[ir] criminal history and the nature of their charges." Kivland also testified that although criminal deportees are supposed to "be processed and released on the day of arrival," certain of them are subject to "further questioning" and may "be detained."

In elaborating on the "processing" of criminal deportees, Kivland testified that individual officers responsible for conducting it have "much discretion" regarding who "needs to be further questioned because they constitute a threat to society or would violate []one of the law enforcement priorities of the Haitian police." She also explained that she considered criminal

deportees to have undergone "prolonged detention" if they were not released on the day of processing and instead were held over.

Kivland testified that the longest period of "prolonged detention" that she had heard of lasted "a month" and that the average length of "prolonged detention" is "[t]hree to five days." She did testify, however, that some criminal deportees "had not been detained beyond one day of processing." Moreover, Kivland did not testify that criminal deportees who are released the same day or who are not held in "jail or prison" are themselves subject to the kind of abuse that she testified that criminal deportees who are held in Haitian jails and prisons face.

Following the close of evidence at the proceedings at which Kivland testified, the IJ found that Bonnet had "merely shown that an officer could detain him in the officer's discretion, not that an officer is more likely than not to detain [Bonnet] upon his return to Haiti." Then, in denying Bonnet's appeal of that finding, the BIA found that the IJ's finding that Bonnet had "not demonstrated that it is more likely than not that he will be imprisoned is not clearly erroneous" and noted that Kivland had not discussed the "likelihood" that Bonnet "would be imprisoned or detained upon initial screening."

Thus, Bonnet must show that the IJ's finding -- as affirmed by the BIA -- is not sustainable on this record. To do so, Bonnet directs our attention to the fact that Kivland was asked

at the proceedings before the IJ whether a prior drug conviction, a lack of familial ties in Haiti, and perceived political opposition to the ruling regime would each make it "more or less likely" that a criminal deportee would experience "prolonged detention in [Haitian] prisons" and that, for each, she said "[m]ore likely."

Bonnet argues that it was clear in context that Kivland meant in so answering that it was "more likely than not" that Bonnet would "suffer prolonged detention in a Haitian prison." Thus, Bonnet contends, it follows that in finding that he had failed to establish it was more likely than not that he would be detained beyond the day of processing, the IJ (or, at least, the BIA) either ignored portions of the record or impermissibly imposed a "formalistic requirement" that Kivland use the words "more likely than not" that prior BIA precedent neither compelled nor supported.

We do not agree. The portions of Kivland's testimony on which Bonnet relies in pressing this challenge are fairly construed just as the IJ and the BIA construed them: to have addressed only the risk that Bonnet would be held in "prolonged detention in these prisons" relative to the risk that other criminal deportees would be so detained. So construed, those portions of Kivland's testimony do not purport to address whether Bonnet was more likely than not to be held in "prolonged detention" in a jail or prison in Haiti. Nor does Bonnet explain what supports his assertion

- 10 -

that the context of Kivland's statements in those portions of her testimony makes clear that she was speaking about the absolute -- rather than the relative -- degree of risk of detention beyond the day of processing that he faced. Thus, Bonnet fails to show either how the IJ erred in finding, or how the BIA erred in affirming the IJ in finding, that his contention that he was more likely than not to be tortured in Haiti while in "prolonged detention" depended on a "series of suppositions," In re J-F-F-, 23 I. & N. Dec. 912, 917 (A.G. 2006), that created too much uncertainty for it to carry his burden.[3]

There is one loose end to address. Bonnet contends that the record in his case is indistinguishable from precedent from other circuits that granted petitions for review from petitioners facing removal to Haiti whom IJs and the BIA had denied CAT protection. See Ridore v. Holder, 696 F.3d 907 (9th Cir. 2012); Jean-Pierre v. U.S. Att'y Gen., 500 F.3d 1315 (11th Cir. 2007). But, in those cases, the IJ either found, or did not dispute, that the petitioner had met his burden to show that it was more likely

---

[3] We note that Kivland's declaration stated that because of Bonnet's risk factors, "Bonnet will be wrongfully detained upon arrival" (emphasis added). But, Bonnet does not argue to us -- and argued, at best, in a cursory fashion to the BIA -- that Kivland's testimony should be read in light of this statement in the declaration or that the relevant section of the declaration was improperly ignored. Thus, any argument that the BIA and IJ erred by failing to consider Kivland's statement in her declaration is waived. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

- 11 -

than not that he would be imprisoned in Haiti following his arrival in that country. Ridore, 696 F.3d at 913 ("[W]e have the testimony of [an expert] who testified that clearly this individual upon his return back to Haiti will be turned over to the Haitian authorities who will immediately intern him in one of their prison facilities where he will be held indefinitely . . . ."); Jean-Pierre, 500 F.3d at 1317 (assuming, presumably based on past Haitian policy and without dispute from the government, that "criminal deportees from the United States are subject to indefinite detention in Haitian prisons").[4]

Moreover, Jean-Pierre is distinguishable because Kivland testified that Haiti has prohibited indefinite detention of criminal deportees since 2006, while the IJ in Jean-Pierre denied his petition for relief under the CAT on January 3, 2006, see 500 F.3d at 1319. As for Ridore, the IJ there does appear to have found that the petitioner in that case was more likely than not to face such extended detention in a Haitian prison based on the lack of his family ties in Haiti, 696 F.3d at 914, 919, and that is a factor to which Bonnet also points. But, the IJ here found otherwise. And, as we have explained, Bonnet has not presented us with a sufficient basis for overturning that finding.

---

[4] In Jean-Pierre, the IJ and BIA appear to have based their decisions denying relief only on a determination that, once in a Haitian prison, the applicant would not suffer torture. 500 F.3d at 1319-20.

Bonnet separately challenges the rejection of his request for CAT protection based on the likelihood that he would be tortured by vigilante mobs in Haiti if he were removed to that country. Bonnet's arguments on this score take aim at the IJ's and BIA's application of our decision in Costa v. Holder, 733 F.3d 13 (1st Cir. 2013).

The IJ and BIA each cited Costa in rejecting Bonnet's claim that he would be tortured by vigilantes with the consent or acquiescence of government officials. Bonnet argues that the IJ and the BIA each not only relied on that case but also erred in doing so because he is asserting that the record shows a systemic governmental failure to control vigilantes and Costa does not address such a contention. He alternatively argues that we must "remand to the BIA to apply its evolving precedent regarding when a government actor is acting in an official capacity for the purposes of CAT relief."

The problem for Bonnet is that the IJ and BIA merely cited Costa as an additional ground for rejecting Bonnet's petition. Thus, even if his argument about how Costa may be distinguished is persuasive, he must also show that it is more likely than not that he would be tortured by vigilantes for this aspect of his CAT claim to have merit. See Mazariegos, 790 F.3d at 287 (setting out five parts of a prima facie claim of torture,

only one of which concerns the role of public officials); J-F-F-, 23 I. & N. Dec. at 917-18, 918 n.4 (requiring applicants for protection under the CAT to show that each step in a hypothetical chain of events is more likely than not to happen for them to show that they are more likely than not to be subject to torture). Yet, the BIA affirmed the IJ's finding that he had not made that showing, and Bonnet does not develop an argument challenging that finding (or the BIA's affirmance of it) in his petition.[5]  His challenge to the denial of his CAT claim based on the violence that he alleges that he would face from vigilantes in Haiti therefore necessarily fails.[6]

**V.**

The petition for review is **denied**.

---

[5] Bonnet contended to the IJ and in his reply brief that he could establish the requisite risk of torture based on the aggregate of the various risks of torture he alleged that he would face.  He did not develop this argument in his opening brief, so it is waived, and we take no position on either the merits of the argument or whether the BIA's analysis is consistent with this approach.  Zannino, 895 F.2d at 17.

[6] We note that the IJ also found that Bonnet had not established a prima facie case on his CAT claim on the basis of the harm that he contended that he would suffer at the hands of the Tonton Macoute, a paramilitary organization in Haiti.  Bonnet has not developed a challenge to that ruling in his petition for review.

- 14 -