# United States Court of Appeals
## For the First Circuit

No. 23-1617

FESNEL LAFORTUNE,

Petitioner,

v.

MERRICK B. GARLAND,
Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Barron, <u>Chief Judge</u>,
Lipez and Kayatta, <u>Circuit Judges</u>.

  <u>Todd C. Pomerleau</u>, with whom <u>Jeffrey B. Rubin</u> and <u>Rubin Pomerleau PC</u> were on brief, for petitioner.
  <u>Greg D. Mack</u>, Senior Litigation Counsel, Office of Immigration Litigation, United States Department of Justice, with whom <u>Brian Boynton</u>, Principal Deputy Assistant Attorney General, Civil Division, and <u>Sabatino F. Leo</u>, Assistant Director, Office of Immigration Litigation, United States Department of Justice, were on brief, for respondent.

August 5, 2024

**BARRON**, **Chief Judge**.  Fesnel Lafortune, a native and citizen of Haiti, petitions for review of the decision by the Board of Immigration Appeals ("BIA") that denied his claims for withholding of removal and protection under the Convention Against Torture ("CAT").  We deny the petition.

## I.

On June 22, 2008, at the age of twelve, Lafortune entered the United States on a B-2 visitor visa that he eventually overstayed.  A little more than a decade later, on November 4, 2019, Lafortune pleaded guilty in the United States District Court for the District of Massachusetts to conspiracy to commit bank fraud in violation of 18 U.S.C. § 1349 and aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1).

Pursuant to the plea agreement, the District Court sentenced Lafortune to a prison term of seven months for the conspiracy-to-commit-bank-fraud offense and twenty-four months for the aggravated-identity-theft offense, with the second sentence to be served consecutive to the first.  Lafortune was also ordered to pay restitution to the victims.

Following Lafortune's convictions, the U.S. Department of Homeland Security ("DHS") served Lafortune with a Notice to Appear ("NTA").  The NTA charged him with removability under 8 U.S.C. § 1227(a)(1)(B) due to lack of lawful immigration status and under 8 U.S.C. § 1227(a)(2)(A)(iii) due to his conviction for

- 2 -

an aggravated felony in the form of an offense that "involves fraud or deceit in which the loss to the victim or victims exceeds $10,000." Id. § 1101(a)(43)(M)(i).

On October 18, 2021, Lafortune appeared pro se before an Immigration Judge ("IJ") and asked for additional time to find counsel.[1] The IJ continued proceedings to provide Lafortune the opportunity to do so.

Lafortune next appeared pro se before the IJ on November 30, 2021. He again sought a continuance to find counsel, but the IJ denied the request, and the removal proceedings went forward. Lafortune admitted to the allegations in the NTA, and the IJ ruled that Lafortune was removable on both charges lodged in the NTA.

Because Lafortune expressed a fear of returning to Haiti, however, the IJ continued the case until December 14, 2021, to give Lafortune time to file an application for asylum. On December 7, 2021, Lafortune submitted an application for asylum and claims for withholding of removal and protection under the CAT (though only Lafortune's claims for withholding of removal and protection under the CAT are before us).

On March 14, 2022, a hearing was held before the IJ in which Lafortune again appeared pro se and asked for a continuance

---

[1] There is an indication in the record that there was a hearing before the IJ prior to October 18, 2021, but the record does not contain a transcript for any such hearing.

to retain counsel. The IJ denied this request and, after taking Lafortune's testimony, found Lafortune ineligible for asylum, withholding of removal, and protection under the CAT.

Still proceeding pro se, Lafortune appealed the IJ's decision to the BIA. Lafortune argued, among other things, that the IJ erred in denying his motion to continue. Lafortune contended that by "h[olding the merits] hearing ahead of" schedule, the IJ did not have the chance to review a letter submitted by the Boston Immigrant Justice Accompaniment Network ("BIJAN") dated March 14, 2022. The letter asked for a continuance of at least four to six weeks because BIJAN was in the process of securing counsel for Lafortune and needed that time to complete its efforts.

Lafortune also submitted additional evidence to the BIA in support of his CAT and withholding-of-removal claims. That evidence included a picture of a burnt-down business building that purportedly belonged to Lafortune's family in Haiti, multiple newspaper articles, and new statements from his sister and aunt.

On November 8, 2022, the BIA sustained Lafortune's appeal in part, remanding to the IJ for consideration of Lafortune's motion for a continuance. The BIA reasoned that because BIJAN's letter had not been associated with the record of proceedings at the time that the IJ ruled on his request for a continuance, Lafortune was entitled to have the opportunity to appear with counsel. The BIA did not express an opinion regarding

- 4 -

Lafortune's application and claims or on the ultimate outcome of his proceedings.

On November 16, 2022, the IJ ordered Lafortune to appear for a hearing on November 29, 2022. Lafortune appeared pro se on that date and stated that he needed more time to find counsel.

The IJ then set another hearing for December 22, 2022. On December 16, 2022, however, BIJAN sent a letter to the IJ asking for an extension of three months to find counsel for Lafortune. DHS opposed the request for a continuance.

On December 20, 2022, the IJ denied the request for a continuance for lack of good cause. The IJ explained that Lafortune had been in proceedings since September 28, 2021, and had been given "more than ample opportunity to secure counsel."

At the December 22, 2022 hearing, Lafortune appeared pro se and asked the IJ to reconsider its denial of his motion for a continuance. The IJ refused to do so. The IJ also refused to reopen the evidentiary record on remand, adopting its prior decision in full and again ordering Lafortune's removal to Haiti.

On January 10, 2023, Lafortune, still acting pro se, filed his second appeal with the BIA. But on March 10, 2023, Jeffrey B. Rubin entered an appearance as counsel for Lafortune.

On appeal to the BIA, counsel for Lafortune challenged the IJ's reasons for denying Lafortune's withholding-of-removal and CAT claims. The BIA dismissed the appeal on June 22, 2023,

- 5 -

finding no error in the IJ's analyses. Lafortune's counsel then filed this timely petition for review.

## II.

"Where, as here, the BIA 'adopts and affirms the IJ's ruling' but nevertheless 'examines some of the IJ's conclusions,' we review both the BIA and IJ opinions as a unit," Gómez-Medina v. Barr, 975 F.3d 27, 31 (1st Cir. 2020) (quoting Perlera-Sola v. Holder, 699 F.3d 572, 576 (1st Cir. 2012)), referring to the IJ and BIA together as the "agency." In conducting our review, we defer to the agency's factual determinations "as long as those determinations are supported by substantial evidence," but we review questions of law de novo. Ahmed v. Holder, 611 F.3d 90, 94 (1st Cir. 2010).

## III.

We start with Lafortune's challenges to the denial of his withholding-of-removal claim. Withholding of removal is unavailable to an applicant convicted of a "particularly serious crime." See 8 U.S.C. § 1231(b)(3)(B)(ii). An aggravated felony is a particularly serious crime if it resulted in a "term of imprisonment of at least 5 years." Id. § 1231(b)(3)(B)(iv). For other offenses, the agency applies a case-by-case inquiry as set forth in Matter of Frentescu, 18 I. & N. Dec. 244 (BIA 1982), and Matter of N-A-M-, 24 I. & N. Dec. 336 (BIA 2007), to determine whether the offense qualifies as a particularly serious crime.

- 6 -

See Valerio-Ramirez v. Sessions, 882 F.3d 289, 295 (1st Cir. 2018) (upholding the Frentescu analysis with respect to withholding of removal).

The agency denied Lafortune's claim for withholding of removal on the ground that he had been convicted of a particularly serious crime. In his petition for review, Lafortune challenges that ruling on a number of grounds. None persuades us.[2]

**A.**

We first address Lafortune's contention that the BIA erred by finding that the IJ had sufficiently specified the prior criminal conviction that qualified as a particularly serious crime when the IJ had not. Lafortune argued to the BIA that the IJ had not done so because the IJ had failed to specify which of his two

---

[2] The government argues that Lafortune has forfeited, waived, and not exhausted many of the arguments he now makes to us on appeal for remanding his withholding-of-removal and CAT claims. We bypass these questions of forfeiture, waiver, and exhaustion when we conclude that the underlying claim lacks merit. See Abdelmalek v. Mukasey, 540 F.3d 19, 24 (1st Cir. 2008) ("[E]ven if we were to apply the exhaustion of remedies standard generously . . . and review these claims, we would deny them on the merits." (citation omitted)); Alsamhouri v. Gonzales, 484 F.3d 117, 123 n.7 (1st Cir. 2007) ("A number of Alsamhouri's arguments may well be barred for failure to meet the exhaustion requirement, as he failed to raise them before the BIA. . . . In any event, even if we indulged in an overly generous reading of his BIA filing to find these arguments raised, we reject them on the merits."); United States v. Uribe-Londono, 409 F.3d 1, 3 n.2 (1st Cir. 2005) ("We bypass the waiver issues as Uribe's claims are obviously meritless."); United States v. Tejeda, 481 F.3d 44, 56 (1st Cir. 2007) ("We bypass the question of forfeiture because even if Tejeda preserved his claim, it fails on the merits.").

convictions -- conspiracy to commit bank fraud, 18 U.S.C. § 1349, or aggravated identity theft, 18 U.S.C. § 1028A(a)(1) -- was the crime that the IJ determined was the particularly serious crime. On that basis, Lafortune argued that a remand to the IJ for clarification was required, because, to deem a noncitizen ineligible for withholding of removal for having been convicted of a particularly serious crime, the agency must identify the crime of conviction that qualifies as a crime of that serious sort. Otherwise, according to Lafortune, the agency would not have rendered a decision that allows for meaningful appellate review. See Halo v. Gonzales, 419 F.3d 15, 18-19 (1st Cir. 2005) ("[A] reviewing court . . . must judge the propriety of [administrative] action solely by the grounds invoked by the agency, and that basis must be set forth with such clarity as to be understandable." (second alteration in original) (internal quotation marks and citation omitted)); SEC v. Chenery Corp., 332 U.S. 194, 196-97 (1947) ("It will not do for a court to be compelled to guess at the theory underlying the agency's action; nor can a court be expected to chisel that which must be precise from what the agency has left vague and indecisive.").

The BIA rejected this argument on the ground that the IJ specifically found that Lafortune's conviction for bank-fraud conspiracy was the particularly serious crime. Despite Lafortune's contrary contention, we see no error in that ruling.

- 8 -

Consistent with the BIA's assessment, the NTA only identified and charged one conviction as a removable offense -- namely, Lafortune's conviction for conspiracy to commit bank fraud. Moreover, in denying Lafortune's request for withholding of removal based on his having been convicted of an aggravated felony, the IJ stated that

> when a crime of conviction has as an element the commission of another crime, a particular[ly] serious crime analysis should take into account the facts and circumstances of that other crime. That is what the Court did in making the decision in this case, noting that the respondent was not only convicted of bank fraud, but also aggravated identity theft (emphasis added).

These statements clearly show that the IJ was considering the aggravated-identity-theft offense only because the conspiracy-to-commit-bank-fraud offense itself "has as an element the commission of [the crime of aggravated identity theft]." They do not indicate that the IJ was treating the aggravated-identity-theft conviction as itself the "crime of conviction" that needed to be assessed for whether it was a particularly serious crime.

If the IJ's statements quoted above left any ambiguity as to which conviction was being analyzed to determine whether it was a particularly serious crime, the IJ cleared up the uncertainty soon thereafter. The IJ did so by citing to Sopo v. U.S. Att'y Gen., 739 F. App'x 554 (11th Cir. 2018), and explaining that Sopo was "persuasive authority." After all, in so doing, the IJ noted

- 9 -

that in Soto "the respondent pled guilty in Federal Court to four counts of bank fraud in violation of 18 U.S.C. [§] 1344, a similar statute to the one here" (emphasis added). Thus, we conclude that the BIA did not err in determining that the IJ adequately specified that the bank-fraud-conspiracy offense was the particularly serious crime.

**B.**

Lafortune next contends that the agency erred by failing to conduct an elements-only examination of the bank-fraud-conspiracy offense in finding that it constituted a particularly serious crime. Here, Lafortune relies on the BIA's ruling in N-A-M-, 24 I. & N. Dec. 336. The BIA stated there that

> [w]here . . . a conviction is not for an aggravated felony for which the alien has been sentenced to an aggregate term of imprisonment of at least 5 years, we examine the nature of the conviction, the type of sentence imposed, and the circumstances and underlying facts of the conviction. . . . If the elements of the offense do not potentially bring the crime into a category of particularly serious crimes, the individual facts and circumstances of the offense are of no consequence, and the alien would not be barred from a grant of withholding of removal. On the other hand, once the elements of the offense are examined and found to potentially bring the offense within the ambit of a particularly serious crime, all reliable information may be considered in making a particularly serious crime determination, including the conviction records and sentencing information, as well as other information outside the confines of a record of conviction.

- 10 -

<u>Id.</u> at 342.

Based on this passage, Lafortune argues that, under <u>N-A-M-</u>, when a conviction for an aggravated felony results in a sentence of less than five years of imprisonment for the person who is requesting withholding of removal (as is the case here), the agency must follow a clear course. It must <u>first</u> and <u>explicitly</u> consider whether the elements of the offense potentially bring the crime into the category of offenses that constitute particularly serious crimes. The agency then may proceed to the "second step" -- which involves weighing the so-called "<u>Frentescu</u> factors" in a multifactor test -- only if in completing the "first step" the agency determines that the elements of the offense potentially bring the crime into the ambit of that category.

Lafortune argues that the IJ did not follow this approach because it "cit[ed] the <u>Frentescu</u> factors and delv[ed] directly into a discussion of the case-specific, factual circumstances of the case without first independently assessing the offense's elements." More specifically, Lafortune contends that "[t]he IJ did not, for example, identify the nature of Lafortune's [crime] (<u>i.e.</u>, 'crime against persons' or 'crime against property') or explain how the element of defrauding a financial institution makes bank fraud fall within the ambit of a [particularly serious crime]." And, Lafortune continues, while "the IJ's description of

- 11 -

the facts of Lafortune's crimes can be understood to have some overlap with the elements of the offenses at issue, this description would, at most, constitute a 'hybrid approach of blending the steps and analyzing the facts without first considering the nature of the crime.'"

"[W]hen an administrative agency decides to depart significantly from its own precedent, it must confront the issue squarely and explain why the departure is reasonable, the obvious goal being to avoid arbitrary agency action." Thompson v. Barr, 959 F.3d 476, 484 (1st Cir. 2020) (internal quotation marks and citation omitted). Thus, a "zigzag course is not open to an agency when . . . the agency has failed to explain why it is changing direction (or even to acknowledge in the later decision that it is detouring from a beaten path)." Davila-Bardales v. INS, 27 F.3d 1, 5 (1st Cir. 1994). Instead, an agency is expected to "apply the same basic rules to all similarly situated applicants." Henry v. INS, 74 F.3d 1, 6 (1st Cir. 1996).

The agency here clearly did not follow the rigid two-step analysis that Lafortune contends N-A-M- required. Similarly, the agency clearly did not purport to overturn N-A-M- or depart from that precedent. Rather, from all that the agency's decisions disclose, it sought to follow N-A-M-. As a result, Lafortune is right that if N-A-M- did require the agency to follow the strict two-step framework for analysis that he reads that precedent to

- 12 -

mandate, then the agency here would have erred, regardless of whether 8 U.S.C. § 1231(b)(3)(B)(ii) itself required the agency to adopt that framework.  See Thompson, 959 F.3d at 484-85.

The government does not suggest otherwise.  The government instead argues only that the particularly-serious-crime analysis under N-A-M- is not as rigid as Lafortune asserts.  In support of this proposition, the government cites Bare v. Barr, 975 F.3d 952, 963 (9th Cir. 2020), which held that

> where the crime is a common federal crime with simple and straightforward elements and is an aggravated felony, the maximum possible sentence for the crime is more than five years' imprisonment, and the IJ or BIA noted facts which correspond to all the elements of the offense as weighing in favor of the crime being particularly serious, we see no reason to put form over substance.  Under these circumstances, we will not require an explicit consideration of the elements of the offense.

Thus, the question that we must answer is: does N-A-M- require the agency to undertake an explicit elements-only analysis prior to delving into "a discussion of the case-specific, factual circumstances of the case"?  We conclude that N-A-M- does not.

For starters, the only question that N-A-M- purports to answer that is relevant for our purposes is "whether . . . [the agency is] limited to certain sources of evidence in determining whether an offense is particularly serious."  24 I. & N. Dec. at 337.  And all that N-A-M- purports to hold as to that question is that "once the elements of the offense are examined and found to

- 13 -

potentially bring the offense within the ambit of a particularly serious crime, all reliable information may be considered in making a particularly serious crime determination, including but not limited to the record of conviction and sentencing information." Id. at 342.

To be sure, in so holding, N-A-M- does say that "once the elements of the offense are examined and found to potentially bring the offense within the ambit of a particularly serious crime, all reliable information may be considered in making a particularly serious crime determination." Id. But N-A-M- does not say at any point in its analysis that the agency must explicitly state that the elements of the offense have been examined. Nor does N-A-M- say at any point that such an examination must explicitly -- and not implicitly -- precede the analysis of "all reliable information." Id. at 343.

That N-A-M- says no such things in describing its two-step framework for analysis should come as no surprise. It is not always a logical entailment of a two-step framework that the first step must be expressly completed before the second step may be addressed.

This reading of N-A-M- comports with the out-of-circuit precedents that Lafortune invokes to support his position as to what N-A-M- requires: Luziga v. U.S. Att'y Gen., 937 F.3d 244 (3d Cir. 2019); and Ojo v. Garland, 25 F.4th 152 (2d Cir. 2022).

- 14 -

Indeed, he contends that each of these Circuits has also rejected the view that N-A-M- tolerates a "hybrid approach."

The Third Circuit in Luziga does state that the immigration judge there erred in skipping over the elements of the offense, and the court then did remand the case to the BIA to determine whether the elements of the petitioner's offense made the offense such that it potentially fell within the ambit of a particularly serious crime. 937 F.3d at 253-54. But, in so ruling, the Third Circuit explained that although the BIA had claimed to consider the elements of the offense, it "listed as 'elements' specific offense characteristics such as loss amount" that were not actually elements of the offense. Id. at 254.

Lafortune does not make any argument to us that the agency here similarly might have misapprehended the elements of his offense. His only argument to us is that an agency must, in all cases, first and explicitly consider the elements of the petitioner's offense before considering the specific facts of the case. His contention, in other words, is that the agency reversibly errs in failing to do so even if the record reveals no basis for concern either that the elements preclude the offense from being a particularly serious crime or that the agency misapprehended the nature of those elements. We do not understand Luziga to support that sweeping proposition.

The Second Circuit's decision in Ojo is similarly unhelpful to Lafortune. The court there did state that "the BIA's own precedent requires the first step of the analysis to consist of an elements-only examination of the crime at issue to determine whether such elements 'potentially bring the crime into a category of particularly serious crimes.'" Ojo, 25 F.4th at 167 (quoting N-A-M-, 24 I. & N. Dec. at 342) (citing Luziga, 937 F.3d at 254). But, as in Luziga, the Second Circuit found that a remand was required because "the IJ misapprehend[ed] the elements by classifying the offense as a 'crime against persons.'" Id. at 168 n.12. In contrast, Ojo explained, the Second Circuit had upheld the agency's application of N-A-M- in an earlier case before it because "[t]he IJ's decision [there] stated the threshold question and the elements of the offense of conviction before considering the individual factors" and because there was "no indication that the agency misapprehended the offense elements." Id. (first alteration in original) (quoting Mbendeke v. Garland, 860 F. App'x 191, 193 n.1 (2d Cir. 2021)).

In sum, we do not read N-A-M- to require that, in every "particularly serious crime" case, the agency must set forth an explicit discussion of the elements of the offense of conviction prior to discussing any case-specific facts. Nor do we read either the Second or the Third Circuit to have held otherwise. See id.; Luziga, 937 F.3d 244. In fact, as we noted above, the Ninth

Circuit has held that N-A-M- does not require what Lafortune contends that it does. See Bare, 975 F.3d at 963. For all these reasons, we reject Lafortune's argument that the agency erred by failing to conduct an explicit elements-only analysis before its analysis of case-specific facts to determine whether Lafortune's crime of conviction was a particularly serious crime.

## C.

Lafortune's final contention as to the denial of the request for withholding of removal concerns how the agency weighed the Frentescu factors. The multifactor test articulated in Frentescu instructs courts, when assessing whether an offense for which the petitioner was sentenced to a prison term of less than five years constitutes a particularly serious crime, to "look to such factors as the nature of the conviction, the circumstances and underlying facts of the conviction, the type of sentence imposed, and, most importantly, whether the type and circumstances of the crime indicate that the alien will be a danger to the community." 18 I. & N. Dec. at 247. More specifically, Lafortune argues that the agency failed to (1) take into account the nature of Lafortune's conviction; (2) consider and weigh any positive circumstances or underlying facts; and (3) assess whether the circumstances of Lafortune's offense indicate that he will be a danger to the community.

We review for abuse of discretion the agency's assessment and weighing of the Frentescu factors, including the agency's conclusion that the crime of conviction was "particularly serious." See Arbid v. Holder, 700 F.3d 379, 384 (9th Cir. 2012); Gao v. Holder, 595 F.3d 549, 557 (4th Cir. 2010). Under this deferential standard, we will uphold the determination "unless it was made 'without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Choeum v. INS, 129 F.3d 29, 44 (1st Cir. 1997) (quoting Hazzard v. INS, 951 F.2d 435, 438 (1st Cir. 1991)); see also Gao, 595 F.3d at 557 ("Appellate courts should not lightly reverse for abuse of discretion in cases where, as here, lower tribunals weigh various factors under a totality-of-the-circumstances test."). We see no abuse of discretion here.

## 1.

After listing specific facts pertinent to Lafortune's conviction, the IJ stated that it "finds that the nature of the conviction and circumstances and underlying facts of the case, as well as the sentence imposed, . . . show[] that this was a particularly serious crime" (emphasis added), without suggesting that it understood the offense to be a crime against persons. Lafortune argues that the agency "erred by failing to consider the nature of Lafortune's offenses, specifically that [Lafortune's

- 18 -

offenses] qualify as [crimes] against property rather than [crimes] against a person."

To the extent that Lafortune means to argue that the agency committed error because it mistakenly thought his crime of conviction was a crime against persons rather than a crime against property, we are not persuaded. And that is so even if we assume the crime is against property and not persons. The reason is that there is no indication that the agency misapprehended whether Lafortune's crime of conviction was a crime against property such that a remand would be warranted on that ground. Cf. Ojo, 25 F.4th at 165-68 (remanding given the IJ's erroneous identification of conspiracy to commit wire fraud and identity theft as crimes against persons).

To the extent that Lafortune instead means to argue that the agency erred because it did not account for the nature of Lafortune's offense being a crime against property in undertaking its Frentescu analysis, the argument also fails. And that is so, again, even assuming that his offense was a crime against property. The reason is that Lafortune failed to make this contention to the BIA. See 8 U.S.C. § 1252(d)(1); Varela-Chavarria v. Garland, 86 F.4th 443, 449-50 (1st Cir. 2023) (declining to review an unexhausted procedural-due-process claim); Odei v. Garland, 71 F.4th 75, 78 n.1 (1st Cir. 2023) (declining to consider unexhausted arguments); see also Santos-Zacaria v. Garland, 143 S. Ct. 1103,

- 19 -

1115 (2023); United States v. Palomar-Santiago, 593 U.S. 321, 326 (2021) ("When Congress uses 'mandatory language' in an administrative exhaustion provision, 'a court may not excuse a failure to exhaust.'" (quoting Ross v. Blake, 578 U.S. 632, 639 (2016))); Fort Bend County v. Davis, 587 U.S. 541, 548 (2019).

## 2.

Lafortune separately argues that the agency abused its discretion because it "did not contemplate any positive facts and circumstances in [its particularly-serious-crime] analysis. Put differently, [it] only considered negative factors." The record shows otherwise.

The IJ stated that "the Court does not accept [Lafortune's] testimony . . . that he was unknowingly recruited to participate in this conspiracy" because "[t]he scheme [Lafortune] was involved with was complex, using the false identities of two victims, as well as fake paperwork for a false business. It shows a high level of criminal intent on [Lafortune's] part." In other words, the IJ did consider the potentially mitigating circumstance that Lafortune was "unknowingly recruited to participate" in the conspiracy and, although the IJ found Lafortune "generally credible," explicitly rejected this specific testimony. See Seng v. Holder, 584 F.3d 13, 18 (1st Cir. 2009) ("Should the IJ reasonably determine that the alien's testimony is not credible, he may disregard it in whole or in part."), superseded by statute

on other grounds, Real ID Act of 2005, Pub. L. No. 109-13, § 101(a)(3), 119 Stat. 302, 303, as recognized in Ahmed v. Holder, 765 F.3d 96, 99 (1st Cir. 2014).

**3.**

Lafortune next contends that, in assessing whether his conviction for conspiracy to commit bank fraud was a particularly serious crime, the agency failed to consider whether the circumstances of Lafortune's commission of that crime indicate that he will be a danger to the community. Not so.

The IJ conducted a detailed inquiry into the circumstances of Lafortune's commission of the crime. It highlighted how Lafortune "worked with other conspirators to defraud two victims of substantial amounts of money over a period of time." The BIA then endorsed the IJ's findings and emphasized that Lafortune's conviction for conspiracy to commit bank fraud, "resulting in loss to a victim in excess of $10,000," constitutes a particularly serious crime for withholding-of-removal purposes. These statements, along with other statements by the agency regarding the seriousness of Lafortune's fraudulent scheme -- evidenced by its complexity and the significant harm caused -- show that the agency did in fact consider and find that Lafortune posed a danger to the community.

**4.**

For all these reasons, we must reject Lafortune's contention that the agency abused its discretion when it weighed the Frentescu factors and concluded that Lafortune committed a particularly serious crime. See Arbid, 700 F.3d at 385; Gao, 595 F.3d at 557. This ground for overturning the agency's denial of his request for withholding of removal therefore fails.

**IV.**

Lafortune separately challenges the agency's denial of his request for protection under the CAT. Here, too, we are not persuaded.

**A.**

To succeed on his request for protection under the CAT, Lafortune must show that "it is more likely than not that he will be tortured if returned to his home country." Bonnet v. Garland, 20 F.4th 80, 84 (1st Cir. 2021) (quoting Mazariegos v. Lynch, 790 F.3d 280, 287 (1st Cir. 2015)). He must further show that such torture will occur "by or with the acquiescence of a government official." Nako v. Holder, 611 F.3d 45, 50 (1st Cir. 2010). "Acquiescence includes willful blindness." Perez-Trujillo v. Garland, 3 F.4th 10, 18 (1st Cir. 2021).

**B.**

We begin with Lafortune's arguments that the agency failed to consider certain "relevant evidence in evaluating

Lafortune's risk of torture." Specifically, Lafortune contends that the agency failed to consider (1) evidence about the last time Lafortune's father was threatened by "people affiliated with government officials"; (2) Lafortune's testimony "about the ongoing campaign of political repression [in Haiti] by current regime officials and linked groups, such as 400 Mawozo, against opposition parties, such as Lavalas"; and (3) evidence that Lafortune's parents are hiding "due to fear [of] government officials and their affiliated criminal groups."

Although "the [agency] is required to consider all relevant evidence in the record," Lin v. Mukasey, 521 F.3d 22, 28 (1st Cir. 2008), "each piece of evidence need not be discussed in a [BIA or IJ] decision," Chen v. Holder, 675 F.3d 100, 106 (1st Cir. 2012) (quoting Morales v. INS, 208 F.3d 323, 328 (1st Cir. 2000)). "When the [agency's] decision is neither inconsistent with [the evidence at issue] nor gives reason to believe the [agency] was unaware of it, we have no reason to doubt that the agency considered the evidence." Lin, 521 F.3d at 28.

The record belies Lafortune's assertions that the agency "was unaware of [the evidence at issue]" and thus that we have "reason to doubt that the agency considered the evidence." Id. The IJ specifically stated that, "[i]n making [its] decision, [it] considered the totality of the admitted evidence whether specifically referenced in [its] decision o[r] not." The IJ also

stated that Lafortune "testified that his father has continued to receive death threats and other harm since he has been in Haiti and since [Lafortune] fled Haiti." But, the IJ continued, Lafortune "could not provide any specific examples of harm other than saying that some time -- maybe within the last year -- unknown individuals showed up at his father's home with torches, threatening to burn his home down." The IJ then went on to state that part of why it was not convinced "that [Lafortune] can show likelihood of future torture is that [Lafortune's] father, who seemed to be the primary target for all these instances of harm and threats, has continued to live in Haiti continuously since that time and has not actually been physically harmed." Additionally, the IJ explicitly referenced parts of Lafortune's testimony about 400 Mawozo and his family's participation in the Lavalas party: "[Lafortune] believes that [the individuals who sent death threats] were either police officers or members of an organization called 400 Mawozo, which is a private arm of the government, sort of like a gang. [Lafortune's family] were threatened that they would be killed if they did not stop supporting Lavalas."

So, "[w]e see no reason to surmise that the [agency] overlooked" the evidence in question. Id. Rather, the agency simply analyzed the evidence and was not convinced that it

- 24 -

satisfied Lafortune's "burden of proof for relief under the Convention [A]gainst Torture."

## C.

We now address Lafortune's contention that the "IJ neglected [its] duty to develop the record . . . by failing to consider the [2021] U.S. State Department Report for Haiti . . . when examining country conditions as part of [its] CAT application analysis." Lafortune notes that the Report describes "unlawful and arbitrary killings by gangs allegedly supported by government officials and private-sector actors, as well as the Catholic Commission for Peace and Justice's demand for a government investigation into the hidden forces behind the violence, including political and economic actors bankrolling gang activity" (cleaned up). He also notes that he appeared pro se both times he came before the IJ and that immigration judges have a heightened duty to develop the record when faced with a pro se applicant for relief. See Mekhoukh v. Ashcroft, 358 F.3d 118, 129 n.14 (1st Cir. 2004) ("[U]nlike an Article III judge, [an IJ] is not merely the fact finder and adjudicator but also has an obligation to establish the record." (quoting Yang v. McElroy, 277 F.3d 158, 162 (2d Cir. 2002))); Quintero v. Garland, 998 F.3d 612, 622 (4th Cir. 2021) (holding that "immigration judges have a legal duty to develop the record, which takes on particular importance in pro se cases"); Dorce v. Garland, 50 F.4th 207, 224 (1st Cir. 2022)

(Lipez, J., dissenting) (stating that IJs must "fully explore . . . highly relevant facts, particularly when faced with a pro se applicant for relief"). Lafortune thus contends that, "[g]iven the State Department Report's relevance and the IJ's heightened duty toward Lafortune when he appeared pro se before [it]," the IJ should have taken administrative notice of the Report, despite Lafortune not having introduced the Report into evidence. See Gebremichael v. INS, 10 F.3d 28, 39 (1st Cir. 1993).

Because a showing by a petitioner of a particularized risk of future torture is essential to prevailing on a CAT claim, Lafortune cannot point merely to general conditions applicable to millions of Haitians that are noted in the Report to bolster his claims, see Bazile v. Garland, 76 F.4th 5, 16 (1st Cir. 2023) ("The petitioner conceded that the country conditions report showed only generalized political turmoil, with no particular mention of either the Lavalas Party or its adherents."), let alone fault the IJ for not taking administrative notice of such an extra-record report about country conditions, see id. at 15 (noting that "generalized statements of belief, devoid of specifics, are insufficient to bear the weight of a CAT claim" and that "general evidence about country conditions cannot compensate for the lack of specific evidence showing a particularized risk of torture"). Thus, we conclude that the IJ did not err in not taking administrative notice of the 2021 U.S. State Department Report for

- 26 -

Haiti, as, even though Lafortune contends that he was subject to torture because of his membership in the Lavalas party, the Report does not reference that party.

D.

We next address Lafortune's two contentions that concern how the IJ proceeded on remand from the BIA. First, he appears to be contending that, following the remand, the IJ failed to adequately "develop the record" because the IJ refused to reopen the evidentiary record and consider new evidence submitted by Lafortune and that the BIA erred in ruling otherwise. Second, he contends, seemingly as a fallback, that, in any event, the BIA erred by failing to provide a reasoned analysis for its denial of Lafortune's argument on appeal to it that the IJ's refusal to reopen the evidentiary record violated his due-process right to a full and fair hearing. Neither argument persuades.

Lafortune notes that when he first appealed the IJ's March 14, 2022 decision to the BIA, he filed, along with his notice of appeal, additional evidence in support of his CAT claim. "Most notably," Lafortune highlights, "he appended new written statements from his sister, Fedia, and aunt, Marie Ange, describing more recent events of threats and harm suffered by Lafortune's parents and Lavalas political party members."

The BIA, without explicitly addressing the new evidence, "conclude[d] that remand [was] warranted for [Lafortune]

to have an opportunity to appear with counsel." The BIA made sure to clarify, however, that "[o]n remand, the Immigration Judge may take any action [it] deems appropriate and necessary. The Board expresses no opinion regarding the ultimate outcome of these proceedings." Subsequently, on remand, the IJ refused to reopen the evidentiary record, explaining that

> [e]ven in a pro se capacity, [Lafortune] was given more than enough time to prepare for his [prior] individual [merits] hearing on March 14, 2022. On December 14, 2021, he requested 30 to 60 days to prepare for his hearing and he was given a full 60 days. Then after two more continuances he received another full month. Thus, [Lafortune] has had a full three months to prepare for his case from the time it was initially set for an individual hearing and he did, in fact, submit substantive evidence in support of his claims.

Lafortune pressed the argument to the BIA following the IJ's decision on remand that the IJ failed to adequately "develop the record" because the IJ refused to reopen the evidentiary record. The BIA rejected that argument, noting that "it is the respondent's burden of proof to demonstrate eligibility for relief," and thereafter citing to 8 C.F.R. § 1208.16(c)(2). That reasoning appears to align with the IJ's justification for refusing to reopen the record: Lafortune had had "more than enough time to prepare for his hearing," and "he did, in fact, submit substantive evidence in support of his claims." We agree with the agency that, given the course of proceedings in this case, the IJ's decision to

adjudicate Lafortune's claims on the same record as the previous hearing was consistent with due process and its obligation to develop the record.[3]

We similarly find unpersuasive Lafortune's argument that the BIA failed to provide a reasoned analysis for its denial of his challenge to the IJ's actions following the BIA's remand. The BIA expressly countered Lafortune's claim about a duty to develop the record by stating that, "[a]lthough [Lafortune] argues on appeal the [IJ] failed to adequately develop the record, it is the respondent's burden of proof to demonstrate eligibility for relief . . . . 8 C.F.R. § 1208.16(c)(2)." Then, shifting from that point, the BIA indicated that the record supported the IJ's decision denying CAT protection, as, inter alia, Lafortune "provided no evidence to establish a particularized risk of torture by or with the consent or acquiescence of a public official." As noted, these observations by the BIA accord with the IJ's

---

[3] "Notably, [the BIA's] remand order did not require that the [IJ] permit the parties to submit additional evidence, and the [IJ] did not request such submissions following [the BIA's] remand." Li v. U.S. Att'y Gen., 446 F. App'x 501, 503 (3d Cir. 2011). Indeed, the BIA stated in its decision that "[t]he record is remanded to the Immigration Judge for further proceedings consistent with [its] opinion and the entry of a new decision" while emphasizing that remand was warranted "for the respondent to have an opportunity to appear with counsel" and that "[o]n remand, the Immigration Judge may take any action [it] deems appropriate and necessary" (emphasis added).

determination that, because Lafortune had already had ample opportunity to adduce evidence in support of his CAT claim, it was proper to resolve his claim based on the pre-remand record.

"[T]he BIA is not required to detail exhaustively its reasons for affirmance. Where, as here, the BIA's decision 'illuminate[s] the path of its reasoning,' no more is necessary." Telyatitskiy v. Holder, 628 F.3d 628, 631 n.2 (1st Cir. 2011) (second alteration in original) (quoting Lopez Perez v. Holder, 587 F.3d 456, 460 (1st Cir. 2009)). We therefore discern no error on the BIA's part.

## E.

Lafortune's last argument is that the BIA erred in rejecting his CAT claim because Lafortune "did not demonstrate he is more likely than not to be tortured in Haiti by or with the consent or acquiescence (to include willful blindness) of a public official or another individual acting in an individual capacity." In support of this statement, the BIA noted that Lafortune's "family was able to report the harm they experienced to the police on at least four separate occasions, and the police indicated that investigations were ongoing for each incident." The BIA then explained that Lafortune "provided no evidence to establish a particularized risk of torture by or with the consent or acquiescence of a public official." The BIA also invoked Granada-Rubio v. Lynch, 814 F.3d 35, 40 (1st Cir. 2016), for the

proposition that "general reports of corruption or ineffective policing are insufficient to establish acquiescence."

Lafortune argues to us that his "father's ability to report the threats and [the] police reports' allusion to ongoing investigations, by itself, is insufficient to defeat his CAT claim." And that is so, he contends, because "[n]othing in the record suggests that the police ever took any action to actually protect him." Lafortune therefore contends that "[t]his case should . . . be remanded with instructions for the agency to explore and consider the Haitian[] government's lack of response to Lafortune's father's reported incidents of harm in its CAT analysis."

Lafortune must show, however, that the record compels a conclusion contrary to the agency's determination. See 8 U.S.C. §§ 1229a(c)(4)(A)(i), 1252(b)(4)(B). But the agency "considered the evidence [Lafortune] emphasizes on appeal, and [Lafortune] falls short of showing the evidence compelled findings in his favor: a reasonable factfinder could agree with the [agency] that the police, though imperfect and struggling with [ineffectiveness], were nonetheless acting against" those attempting to harm Lafortune's family and thus "would not exhibit willful blindness [or consent or acquiesce] to [torture] against [Lafortune] if he returned to [Haiti]." Blanco-Valdovinos v. Garland, No. 21-9512, 2021 WL 5264257, at *2 (10th Cir. Nov. 12,

- 31 -

2021).  We conclude, therefore, that the BIA did not err in denying Lafortune's CAT claim on the ground that he had failed to meet his burden to show that it was more likely than not that the government of Haiti would consent or acquiesce to his torture if he were removed to that country.

**V.**

For the foregoing reasons, we **<u>deny</u>** Lafortune's petition for review.