# United States Court of Appeals
## For the First Circuit

No. 14-2318

LIZBETH PATRICIA VELERIO-RAMIREZ,

Petitioner,

v.

LORETTA E. LYNCH,[*]
Attorney General of the United States,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Torruella, Lynch, and Kayatta,
Circuit Judges.

Mary P. Holper, Director, Boston College Legal Services LAB, Immigration Clinic, for petitioner.
Jem Colleen Sponzo, with whom Francis W. Fraser, Senior Litigation Counsel, Office of Immigration Litigation, United States Department of Justice, Benjamin C. Mizer, Principal Deputy Assistant Attorney General, Civil Division, and John W. Blakeley, Assistant Director, Office of Immigration Litigation, were on brief, for respondent.
Manny D. Vargas, Trina Realmuto, and Khaled Alrabe, on brief for the National Immigration Project of the National Lawyers Guild and the Immigrant Defense Project, amici curiae in support of petitioner.

---

[*] Pursuant to Fed. R. App. P. 43(c)(2), Attorney General Loretta E. Lynch has been substituted for former Attorney General Eric H. Holder, Jr., as the respondent.

        Philip L. Torrey, on brief for Harvard Immigration and Refugee Clinical Program, Harvard Law School, amicus curiae in support of petitioner.

---

December 11, 2015

---

**LYNCH**, **Circuit Judge**.  Inconsistent characterization of the governing law by the immigration authorities and insufficient analysis by the Board of Immigration Appeals ("BIA") lead us, in an abundance of caution, to remand this petition to the BIA.

Lizbeth Patricia Velerio-Ramirez[1] ("Valerio"), a native and citizen of Costa Rica, petitions for review of an order of the BIA denying her application for withholding of removal.  Her petition contends that the BIA erred in upholding the immigration judge's ("IJ") determination that her conviction for aggravated identity theft was a "particularly serious crime" rendering her ineligible for withholding of removal under 8 U.S.C. § 1231(b).

However, Valerio is not in fact in removal proceedings subject to 8 U.S.C. § 1231.  The Immigration and Naturalization Service ("INS") placed Valerio in deportation -- not removal -- proceedings in 1991.  By the time the Department of Homeland Security[2] ("DHS") took action in Valerio's case in 2011, however, Congress had replaced deportation with removal, a process governed by a different set of statutes, and DHS mistakenly regarded Valerio as being in removal proceedings.  DHS leveled removability charges

---

[1]    The petitioner has informed the court that her maiden name "Valerio-Ramirez" was misspelled in the record as "Velerio-Ramirez."  We refer to her as "Valerio" going forward.

[2]    In 2003, "the functions of the INS were reorganized and transferred to the Department of Homeland Security ('DHS')." Santana v. Holder, 566 F.3d 237, 239 n.1 (1st Cir. 2009).

against her, and the IJ's decision applied removal law in denying her application for relief.

In its 2014 denial of Valerio's appeal of the IJ's decision, the BIA identified the error and stated that Valerio was in deportation proceedings governed by 8 U.S.C. § 1253. It also said that the law governing the two proceedings was the same. But the statutory language is not the same, a fact not acknowledged by the agency. The version of former 8 U.S.C. § 1253(h) governing Valerio's claim for withholding of deportation contains an additional provision, § 1253(h)(3), which was added by Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") § 413(f) and was nullified only a few months later in 1996 when Congress replaced deportation with removal. The language of § 1253(h)(3) is not present in the withholding of removal statute, 8 U.S.C. § 1231(b)(3), or earlier versions of 8 U.S.C § 1253(h).

Here, the BIA's review of Valerio's application not only omitted any reference to § 1253(h)(3) but also failed to acknowledge its existence or discuss how it applies. Given these circumstances, and the additional fact that the BIA has not spoken on how § 1253(h)(3) applies to non-aggravated felons such as Valerio, we do not reach the merits of Valerio's petition out of deference to the agency. It is not our place to interpret in the first instance a statute which the BIA has been charged with

interpreting.[3]  We reject the government's position that the petitioner has precluded remand because she failed to exhaust the issue of applicable law; the BIA itself raised the issue, and that suffices.  We also reject the government's argument that remand is inappropriate because this court in Choeum v. INS, 129 F.3d 29 (1st Cir. 1997) already decided what there is to decide.  It is for the BIA to consider Choeum on remand.  Accordingly, we now remand Valerio's case to the BIA to interpret and apply the correct law: former 8 U.S.C. § 1253(h) as amended by AEDPA § 413(f).

I.

At age 22, Valerio left Costa Rica and entered the United States with her then-boyfriend Carlos Gomez.[4]  Soon after entering the United States in March 1991, Valerio was apprehended and placed in deportation proceedings for entering without inspection.  Those

---

[3]  That the BIA merely corrects an error of law committed by an IJ does not itself lead to remand.  We remand here in light of the significant additional fact that the BIA has not previously addressed how § 1253(h)(3) applies to non-aggravated felons.  Under Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842–43 (1984), "the BIA is entitled to deference in interpreting ambiguous provisions of the [Immigration and Nationality Act]."  Negusie v. Holder, 555 U.S. 511, 516 (2009); see INS v. Aguirre-Aguirre, 526 U.S. 415, 425 (1999).

[4]  Valerio's declaration in support of her petition for withholding of removal describes childhood trauma she experienced in Costa Rica, including sexual abuse by her father and a local priest.  Valerio also attests to extensive physical, mental, and emotional abuse by her then-boyfriend Gomez, including being thrown on the ground and head-butted while pregnant.  She pleads that Gomez will likely inflict serious harm to her if she returns to her native country.

proceedings were administratively closed after Valerio failed to appear before an IJ in April 1991.

After settling in the United States, between 1995 and 2007, Valerio obtained and used the social security number and identification documents of a real person named Rosa Hernández, in order to obtain employment, a driver's license, and credit cards. In 2007, the real Rosa Hernández contacted the police about possible identity theft, and Valerio was subsequently arrested and indicted for three counts of mail fraud, in violation of 18 U.S.C. § 1341, and one count of aggravated identity theft, in violation of 18 U.S.C. § 1028A. Valerio was found guilty after a jury trial in federal court, and this court affirmed the conviction. See United States v. Valerio, 676 F.3d 237, 240 (1st Cir. 2012). The sentencing judge imposed an order of restitution in the amount of $176,669.77 and imprisonment of two years and one day. Valerio served her sentence and was afterward transferred into DHS custody.

In 2011, DHS re-calendared Valerio's deportation proceeding under the original 1991 charge of deportability pursuant to former § 241(a)(1)(B) of the Immigration and Nationality Act ("INA") (entering without inspection). In her March 29, 2011, responsive pleading, Valerio conceded deportability as charged. On May 5, 2011, Valerio, apparently believing that she was in removal proceedings, filed an application

for asylum and withholding of removal.[5]  The record includes numerous letters from the government to Valerio stating that she is in removal proceedings, and in July 2012, DHS leveled three charges of removability against her.[6]  Although the IJ stated at a March 22, 2011, hearing that Valerio was in deportation proceedings and was applying for relief under the "old rule," the IJ's January 7, 2013, written opinion treated Valerio as being in removal proceedings and applied removal law.

In its January 7, 2013, order and opinion, the IJ pretermitted Valerio's application for withholding of removal on the basis that her crime was "particularly serious."  The IJ also denied her motion to amend her application and ordered her removed to Costa Rica.  After finding Valerio removable, the IJ applied the BIA's multi-factor test set forth in Matter of Frentescu, 18

---

[5]    During her merits hearing on May 1, 2012, Valerio sought only withholding of removal.  Through a subsequent letter, she moved to amend her application to include a request for relief under the Convention Against Torture (CAT).

[6]    Although the government at one point leveled a charge of removability for conviction of an aggravated felony under INA § 237(a)(2)(A)(iii), see 8 U.S.C. § 1227(a)(2)(A)(iii), it later withdrew the charge and does not now contend that Valerio is an aggravated felon.  The government's brief states, Valerio "was not found to be an aggravated felon," and the government has not elsewhere objected to that characterization.  Furthermore, after the government withdrew the aggravated felony conviction charge, neither the IJ nor the BIA's written opinion found Valerio to be an aggravated felon.  We accept the characterization that she is a non-aggravated felon.

I. & N. Dec. 244 (BIA 1982), to determine that Valerio's conviction for aggravated identity theft was a "particularly serious crime," barring her from obtaining withholding of removal under 8 U.S.C. § 1231(b)(3). Finding Valerio barred from withholding by that conviction, the IJ did not address the mail fraud conviction and did not reach the merits of Valerio's application.

On appeal, the BIA upheld the IJ's determination that Valerio had been convicted of a "particularly serious crime" barring withholding but vacated the IJ's order as to the three removability charges. The beginning of the BIA's opinion, in a footnote, states that the IJ mischaracterized the applicable law in referring to withholding of removal, as Valerio was "in deportation proceedings and [was] applying for withholding of deportation pursuant to section 243 of the Act, 8 U.S.C. § 1253." The BIA stated, nonetheless, that "[t]he particularly serious crime analysis is the same under both provisions." Turning to Valerio's withholding application, the BIA applied the Frentescu test, and found, as had the IJ, that Valerio's conviction for aggravated identity theft was a "particularly serious crime," noting that her crime involved a real victim and that identity theft "is a serious problem in our society." The BIA ordered Valerio deported to Costa Rica. This petition followed.

II.

Valerio's petition for review challenges the BIA's application of the "particularly serious crime" exception to her conviction for aggravated identity theft. However, we do not reach the merits of that petition. Her case is governed by the withholding of deportation statute, former 8 U.S.C. § 1253(h), as amended by AEDPA § 413(f). In rejecting her position, the BIA omitted analysis of a portion of the governing statute. While it is well-settled that we defer to the BIA's interpretation of the immigration laws where reasonable, the BIA's decision failed to acknowledge whether or how, if at all, AEDPA § 413(f) changes the "particularly serious crime" determination for a non-aggravated felon like Valerio. We think it prudent to remand to the agency for consideration of the issue. We explain below.

A.    The "Particularly Serious Crime" Exception

Congress has long prohibited the Attorney General from deporting a person to a country if she "determines that [an] alien's life or freedom would be threatened in such country on account of race, religion, nationality, membership in a particular social group, or political opinion," 8 U.S.C. § 1253(h)(1) (1980); id. (1990); id. (1996). See Alphonsus v. Holder, 705 F.3d 1031, 1037-41 (9th Cir. 2013) (discussing the statute's history). An exception to that rule provides that withholding of deportation "shall not apply to any alien if the Attorney General determines

that . . . (B) the alien, having been convicted by a final judgment of a particularly serious crime, constitutes a danger to the community of the United States," 8 U.S.C. § 1253(h)(2) (1980).

In 1982, the BIA in Matter of Frentescu set forth a multi-factor test to determine whether a crime is "particularly serious." See 18 I. & N. Dec. at 247 ("In judging the seriousness of a crime, we look to such factors as the nature of the conviction, the circumstances and underlying facts of the conviction, the type of sentence imposed, and, most importantly, whether the type and circumstances of the crime indicate that the alien will be a danger to the community.").[7]

In 1990, Congress amended § 1253(h)(2) by categorically designating all aggravated felonies as "particularly serious" crimes. See Immigration Act of 1990, Pub. L. No. 101–649, § 515, 104 Stat. 4978, 5053 (formerly codified at 8 U.S.C. 1253(h)(2)). Then in April 1996, Congress passed AEDPA, which expanded the list

---

[7] The BIA has also interpreted the exception to require only one determination, that is, an alien found to be convicted of a "particularly serious crime" is necessarily found to be a "danger to the community." See Matter of Carballe, 19 I. & N. Dec. 357, 359–60 (BIA 1986). All circuits that have addressed the issue, including our own, have upheld this interpretation. See Kankamalage v. INS, 335 F.3d 858, 861 n.2 (9th Cir. 2003); Hamama v. INS, 78 F.3d 233, 240 (6th Cir. 1996); Ahmetovic v. INS, 62 F.3d 48, 53 (2d Cir. 1995); Al-Salehi v. INS, 47 F.3d 390, 391 (10th Cir. 1995); Kofa v. INS, 60 F.3d 1084, 1088 (4th Cir. 1995) (en banc); Garcia v. INS, 7 F.3d 1320, 1322 (7th Cir. 1993); Mosquera-Perez v. INS, 3 F.3d 553, 559 (1st Cir. 1993); Martins v. INS, 972 F.2d 657, 661 (5th Cir. 1992) (per curiam); Crespo-Gomez v. Richard, 780 F.2d 932, 935 (11th Cir. 1986).

of aggravated felonies. See AEDPA, Pub. L. No. 104-132, § 440(e), 110 Stat. 1214, 1277-78 (1996) (codified at 8 U.S.C. § 1101(a)(43)). At the same time, § 413(f) of that legislation created an override provision to the "particularly serious crime" bar, which was codified at 8 U.S.C. § 1253(h)(3). In relevant part, 8 U.S.C. § 1253(h)(3) read:

> (3) Notwithstanding any other provision of law, paragraph (1) [requiring withholding of deportation] shall apply to any alien if the Attorney General determines, in the discretion of the Attorney General, that --
>
> . . .
>
> (B) the application of paragraph (1) to such alien is necessary to ensure compliance with the 1967 United Nations Protocol Relating to the Status of Refugees.

AEDPA § 413(f), 110 Stat. at 1269 (formerly codified at 8 U.S.C. § 1253(h)(3)).

The BIA continued to apply the "particularly serious crime" bar without a separate "danger to the community" determination. See In Re Q-T-M-T-, 21 I. & N. Dec. 639, 656 (BIA 1996). However, in light of AEDPA § 413(f), the BIA began treating only aliens convicted of aggravated felonies with sentences of five years or more as per se convicted of "particularly serious" crimes and began subjecting aliens convicted of aggravated felonies with shorter sentences to a rebuttable presumption of conviction of a "particularly serious crime," adjudged by whether

- 11 -

"any unusual aspect of the alien's particular aggravated felony conviction . . . convincingly evidences that his or her crime cannot rationally be deemed 'particularly serious' in light of our treaty obligations under the Protocol." Id. at 654 (citing the Frentescu test in explaining how to apply 8 U.S.C. § 1253(h)(3) to aggravated felony convictions).

AEDPA § 413(f) was short-lived. In September 1996, through the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Congress replaced deportation with removal proceedings, see Pub. L. No. 104-208, §§ 301-309, 110 Stat. 3009-546, 3009-575 to 3009-627, and in the new withholding of removal provision, omitted the language previously added by AEDPA § 413(f), see § 305(a)(3), 110 Stat. at 3009-602 (codified at 8 U.S.C. § 1231(b)). IIRIRA also eliminated the categorical designation of all aggravated felonies as "particularly serious" crimes. Id. Thereafter, the BIA returned to applying the Frentescu test to determine whether a conviction for an aggravated felony with a sentence shorter than five years or for a non-aggravated felony is "particularly serious." See Alphonsus, 705 F.3d at 1041.

Because INS placed Valerio in deportation proceedings in 1991, and final action was not taken in her case until well after 1996, Valerio's deportation proceedings are governed by former 8 U.S.C. § 1253(h), as amended by AEDPA § 413(f). See

- 12 -

AEDPA § 413(g), 110 Stat. at 1269–70 (1996) (stating that § 413(f) "shall apply to applications filed before, on, or after such date if final action has not been taken on them before such date").[8]

B.   Application of Former 8 U.S.C. § 1253(h), as Amended by AEDPA § 413(f)

The government argues we must dismiss the bulk of the petition by suggesting that Valerio did not raise before the BIA the issue of whether AEDPA § 413(f) alters the "particularly serious crime" determination in her case, and so arguments about applicable law, which are raised by Valerio and amici curiae,[9] are unexhausted.  See Makhoul v. Ashcroft, 387 F.3d 75, 80 (1st Cir. 2004).  However, we do not have to address whether Valerio herself raised an appropriate challenge to the BIA's application of law, as the BIA itself raised the issue sua sponte.  See Mazariegos-Paiz v. Holder, 734 F.3d 57, 60 (1st Cir. 2013) ("[T]he administrative exhaustion requirement is satisfied as to particular issues when the agency, either on its own initiative or at the behest of some other party to the proceedings, has addressed

_____

[8]    The provisions at issue in IIRIRA took effect on April 1, 1997, and do not apply to "deportation proceedings commenced before April 1, 1997, and in which a final order of deportation issued after October 30, 1996," Prado v. Reno, 198 F.3d 286, 288 n.2 (1st Cir. 1999).

[9]    Two briefs in support of the petitioner have been submitted in this case, one by the National Immigration Project of the National Lawyers Guild and the Immigrant Defense Project, and another by the Harvard Immigration and Refugee Clinical Program of Harvard Law School.  We acknowledge their assistance.

those claims on the merits, regardless of whether the petitioner himself raised them."); see also Meng Hua Wan v. Holder, 776 F.3d 52, 56 (1st Cir. 2015).  The BIA addressed applicable law directly in a footnote at the beginning of its opinion, remarking on the IJ's erroneous use of removal law, stating that Valerio's application is governed by deportation law, and making the additional unbriefed determination that "[t]he particularly serious crime analysis is the same under both provisions."  We see no exhaustion objection that would preclude review.

Here, Valerio's opening brief clearly raised the issue of applicable law and included discussion of AEDPA § 413(f), the fact that her case is governed by former 8 U.S.C. § 1253(h), and the import of international law to the application of the statute. We see no reason to conclude that she abandoned these arguments, on which amici have advanced variations.[10]

Still, when the BIA has not spoken on an issue that a statute has placed in its hands, remand is appropriate to give the

---

[10]    The government also contends that we cannot consider the arguments concerning the proper statutory interpretation of AEDPA § 413(f) because they were advanced in the first instance by two amicus briefs involved in the case.  While it is true that "amici may not present legal theories not argued by the parties," they may present "variations on the arguments presented by" a party. Albathani v. INS, 318 F.3d 365, 375 n.6 (1st Cir. 2003).  Amici are permitted to "assist the court in achieving a just resolution of issues raised by the parties." Lane v. First Nat'l Bank of Boston, 871 F.2d 166, 175 (1st Cir. 1989).  They have done so here.

BIA an opportunity to address the issue in the first instance. See Negusie v. Holder, 555 U.S. 511, 516 (2009).

The government also argues that this court has already upheld the BIA's interpretation of former 8 U.S.C. § 1253(h), as amended by AEDPA § 413(f), so there is no reason to remand. See Choeum, 129 F.3d at 35. It is true that the BIA should on remand consider the effect of Choeum, but that does not obviate the need for remand. Choeum concerned an aggravated felon. This case does not. We leave it to the BIA to determine whether that difference is relevant and to articulate the "particularly serious crime" determination for a non-aggravated felon like Valerio. A single, unsupported assertion in a footnote, lacking rationale or precedent, stating that "removal and deportation proceedings are treated the same" is simply not enough, especially in light of the harsh consequences of deportation. See INS v. Cardoza-Fonseca, 480 U.S. 421, 449 (1987).

Accordingly, we remand to the BIA to interpret in the first instance and apply former 8 U.S.C. § 1253(h), as amended by AEDPA § 413(f), to a non-aggravated felon.

### III.

For the reasons stated above, we grant the petition to the extent of remanding this matter to the BIA for further proceedings not inconsistent with this opinion.