# United States Court of Appeals
## For the First Circuit

Nos. 23-2088,
     24-1428

JOSE RODOLFO ESCOBAR LARIN,

Petitioner,

v.

MERRICK B. GARLAND, Attorney General,

Respondent.

PETITIONS FOR REVIEW OF ORDERS OF
THE BOARD OF IMMIGRATION APPEALS

Before

Barron, Chief Judge,
Selya and Howard, Circuit Judges.

SangYeob Kim, with whom Gilles Bissonnette and the American Civil Liberties Union of New Hampshire were on brief, for petitioner.

Lynda A. Do, Trial Attorney, United States Department of Justice, Civil Division, Office of Immigration Litigation, with whom Brian M. Boynton, Principal Deputy Assistant Attorney General, Civil Division, Stephen J. Flynn, Senior Litigation Counsel, Office of Immigration Litigation, and Anna Juarez, Senior Litigation Counsel, Office of Immigration Litigation, were on brief, for respondent.

December 5, 2024

**BARRON**, **Chief Judge**.  Jose Rodolfo Escobar Larin ("Escobar"), a native and citizen of El Salvador, petitions for review of a decision by the Board of Immigration Appeals ("BIA") that affirmed the denial of his claims for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").[1]  He also petitions for review of a separate BIA ruling that denied his motion to reopen his removal proceedings.  We deny the latter petition but grant the former and therefore vacate and remand the BIA's ruling denying his claims for asylum and withholding of removal, as well as his CAT claim, for further proceedings consistent with this decision.

**I.**

**A.**

On February 24, 2022, the U.S. Department of Homeland Security ("DHS") issued Escobar a Notice to Appear.  The Notice to Appear charged Escobar with removability for being present in the United States without being admitted or paroled in violation of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(6)(A)(i).  The DHS thereafter detained Escobar.

On April 22, 2022, Escobar filed a pro se Form I-589 "Application for Asylum and for Withholding of Removal."  The

---

[1]  This convention is formally known as the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, S. Treaty Doc. No. 100-20, 1465 U.N.T.S. 85 (entered into force for the United States Nov. 20, 1994).

Immigration Judge ("IJ") assigned to Escobar's case held a competency hearing pursuant to Matter of M-A-M-, 25 I. & N. Dec. 474 (BIA 2011). The IJ determined that Escobar was not competent to represent himself in immigration proceedings. Escobar was then appointed counsel, and the counsel filed an amended Form I-589 application on Escobar's behalf on August 2, 2022.[2]

**B.**

Individuals seeking asylum must demonstrate that they are "unable to go back to [the country of removal] due to '[past] persecution or a well-founded fear of [future] persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.'" Lobo v. Holder, 684 F.3d 11, 16 (1st Cir. 2012) (second and third alterations in original) (quoting Hasan v. Holder, 673 F.3d 26, 30 (1st Cir. 2012)); see 8 U.S.C. § 1101(a)(42)(A) (providing that persons who are "unable or unwilling to return to" their country of origin "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion" are refugees for the purposes of asylum); 8 U.S.C. § 1158 (setting out general procedures for grants

---

[2] In the alternative to his claims for asylum, withholding of removal, and CAT protection, Escobar requested that he be allowed to voluntarily depart the United States pursuant to 8 U.S.C. § 1229c(b). Both the IJ and the BIA denied this request, and Escobar does not ask us to review that denial.

of asylum); 8 C.F.R. § 1208.13(b) (providing eligibility criteria for asylum, including requirements for establishing a well-founded fear of future persecution).[3]  Individuals seeking withholding of removal bear the heavier burden of showing "that it is more likely than not that [they] would be subject to persecution on account of an enumerated ground if [they] were repatriated." Villalta-Martinez v. Sessions, 882 F.3d 20, 23 (1st Cir. 2018); see 8 U.S.C. § 1231(b)(3)(A) (providing that "the Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion"); 8 C.F.R. § 1208.16(b) (providing eligibility standards for withholding of removal).  Individuals seeking protection under the CAT must "show that it is 'more likely than not that [they] . . . would be tortured if removed to the proposed country of removal.'"  DeCarvalho v. Garland, 18 F.4th 66, 72 (1st Cir. 2021) (second alteration in original) (quoting 8 C.F.R. § 1208.16(c)(2)).

---

[3] "So-called 'humanitarian asylum' provides that an applicant who has shown past persecution but failed to show a well-founded fear of future persecution can still be granted asylum if . . . '[t]he applicant has established that there is a reasonable possibility that he or she may suffer other serious harm upon removal . . . .'"  Martínez-Pérez v. Sessions, 897 F.3d 33, 42 (1st Cir. 2018) (second and third alterations in original) (quoting 8 C.F.R. § 1208.13(b)(1)(iii)(B)).

## C.

Escobar claimed in his amended asylum application a "well-founded fear of future persecution" in El Salvador "on account of" his membership in various particular social groups ("PSGs"). The asserted PSGs on which Escobar premised his fear of future persecution fell into one of two broader categories: (1) mental illness-based PSGs, which were "Salvadorans with unspecified schizophrenia spectrum and other psychotic disorders who exhibit erratic behavior" and "Salvadorans with disabilities"; and (2) a gang-based PSG defined as "persons who take concrete steps to oppose gang authority." Escobar additionally claimed that he was entitled to humanitarian asylum based on past persecution and a risk of "other serious harm" in relation to several family-based PSGs, which included "grandchildren of [his grandmother]," "members of [his grandmother's] nuclear family," and "familial members of [his grandmother's] household."

Escobar also claimed in his amended asylum application a "well-founded fear of future persecution" in El Salvador on account of "political opinion." He identified the targeted political opinion as an "imputed, anti-gang political opinion" due to his refusal to join the notorious transnational gang, MS-13.

In a brief supporting his amended application for asylum, Escobar acknowledged that he had not applied for asylum, as 8 U.S.C. § 1158(a)(2)(B) generally requires, within one year of

his last arrival in the United States, which occurred in 2004. However, per § 1158(a)(2)(D), claims for asylum that otherwise would be untimely under § 1158(a)(2)(B) are considered timely if the asylum applicant can show either "extraordinary circumstances relating to the delay in filing an application within the [one-year period after arrival]" or "changed circumstances which materially affect the applicant's eligibility for asylum." 8 U.S.C. § 1158(a)(2)(D).

"[E]xtraordinary circumstances" are defined in 8 C.F.R. § 1208.4(a)(5) as "events or factors directly related to the failure to meet the 1-year deadline." 8 C.F.R. § 1208.4(a)(5). The regulation provides that such circumstances "may excuse the failure to file within the 1-year period as long as the alien filed the application within a reasonable period given those circumstances." Id. Section 1208.4(a)(5) further provides that "extraordinary circumstances" may include an applicant's "[s]erious illness or mental . . . disability . . . during the 1-year period after arrival," or a "[l]egal disability . . . during the 1-year period after arrival," such as the applicant's "mental impairment" or status as "an unaccompanied minor." Id. § 1208.4(a)(5)(i)-(ii).

"[C]hanged circumstances" are defined in 8 C.F.R. § 1208.4(a)(4) as "circumstances materially affecting the applicant's eligibility for asylum." 8 C.F.R. § 1208.4(a)(4)(i).

Section 1208.4(a)(4) further provides that such circumstances "may include, but are not limited to: . . . [c]hanges in conditions in the applicant's country of nationality . . . [and c]hanges in the applicant's circumstances that materially affect the applicant's eligibility for asylum."  Id.  Additionally, the applicant must "file an asylum application within a reasonable period given those 'changed circumstances.'"  Id. § 1208.4(a)(4)(ii).  However, § 1208.4(a)(4) indicates that "[i]f the applicant can establish that he or she did not become aware of the changed circumstances until after they occurred, such delayed awareness shall be taken into account in determining what constitutes a 'reasonable period.'"  Id.

Escobar contended that he could satisfy the extraordinary-circumstance exception based on his status as a minor at the time of his arrival in the United States in 2004 in combination with his subsequent development of "serious mental health problems."  Escobar contended that he could satisfy the changed-circumstance exception based on the development of his mental health problems, including his diagnosis of schizophrenia in 2022.  He argued that was so because the development of these mental health problems gave rise to a new ground for asylum not available to him until after one year had passed from the date of his last arrival in this country.

To support the showing of changed circumstances, Escobar submitted a report prepared by a psychiatrist who had evaluated him on August 31, 2022. The psychiatrist concluded in the report that Escobar "most likely suffers from Post-Traumatic Stress Disorder[,] Major Depressive Disorder[,] Unspecified Schizophrenia Spectrum and Other Psychotic Disorder[,] Stimulant Use Disorder[,] and Opiate Use Disorder."

Escobar contended that the 2022 schizophrenia diagnosis and the associated mental health problems demonstrated that there would be a reasonable possibility that he would suffer persecution perpetrated by gang members, by law enforcement, or by hospital staff on account of his mental illness if he were removed to El Salvador. In attempting to make the changed-circumstance showing, Escobar also relied on a United Nations Committee on the Rights of Persons with Disabilities report. Escobar argued that the report provided further support for his assertion that his membership in the claimed mental illness-based PSGs put him at "high risk of physical harm and murder by criminal gangs," "ill-treatment and the use of physical restraints" in "psychiatric and other institutions," and "mistreat[ment]" and "human rights violations" by police and in prisons.

**D.**

Unlike his asylum claims, Escobar's claims for withholding of removal and his claim for protection under the CAT

- 8 -

were not subject to 8 U.S.C. § 1158(a)(2)(B)'s one-year time bar. Escobar based his withholding-of-removal claims on the contention that "given [his] serious mental health conditions and his [political opinion], it is more likely than not that he would be persecuted if removed to El Salvador." Escobar rested his CAT claim on the contention that he could show that "it is more likely than not that he will be tortured" if he were removed to El Salvador because "the harm he will face from gang members, from police, and in a psychiatric facility" on account of his mental illness and his opposition to MS-13 "will all rise to the level of torture."

**E.**

On October 18, 2022, Escobar appeared before the IJ for a removal hearing. Escobar testified at the hearing, and the IJ found him to be a credible witness. The IJ nonetheless denied Escobar's claims for asylum and withholding of removal, as well as his claim for CAT protection.

The IJ determined with respect to Escobar's asylum claims that Escobar had failed to satisfy either the extraordinary-circumstance exception or the changed-circumstance exception to the one-year time bar set forth in 8 U.S.C. § 1158(a)(2)(B). The IJ went on to hold that Escobar's claims for asylum would fail even assuming that they were not time-barred. The IJ also denied Escobar's withholding of removal claims as well as his CAT claim.

**F.**

Escobar appealed the IJ's decision to the BIA. For reasons independent of the one-year time bar, the BIA affirmed the IJ's denial of Escobar's asylum claim predicated on the PSG of "persons who take concrete steps to oppose gang authority." The BIA did the same as to his asylum claim predicated on his imputed "'anti-gang' political opinion." In consequence of those rulings, the BIA also affirmed the denial of Escobar's withholding of removal claims that were based on those same grounds.

As to Escobar's other claims for asylum, as well as his contention that he "demonstrated an exception to the one-year filing deadline for his asylum application," the BIA remanded to the IJ for additional fact-finding and analysis. The BIA similarly remanded Escobar's remaining withholding of removal claims and his CAT claim.

**G.**

On remand, the IJ addressed whether the one-year time bar set forth in 8 U.S.C. § 1158(a)(2)(B) rendered Escobar's asylum claims untimely. Once again, the IJ determined that the time bar rendered the claims untimely. In accordance with the BIA's instruction, the IJ went on to address the merits of Escobar's family-based and mental illness-based asylum claims. The IJ determined that those claims would fail even if they were not time-barred. The IJ therefore also denied Escobar's related

- 10 -

withholding of removal claims, which rested on the same contentions. The IJ concluded his analysis on remand by denying Escobar's claim for CAT protection.

**H.**

Escobar once again appealed the IJ's decision to the BIA. The BIA affirmed the IJ's ruling in full. Escobar then timely filed a petition for review of the BIA's decision.

While that petition for review was pending, Escobar timely moved the BIA to reopen his proceedings before the agency as to his asylum and withholding of removal claims, as well as to his CAT claim. To prevail on his motion to reopen, Escobar was required to show that the "evidence sought to be offered [on remand] is material and was not available and could not have been discovered or presented at the former hearing." Rivera-Medrano v. Garland, 47 F.4th 29, 35 (1st Cir. 2022) (alteration in original) (quoting Matter of Coelho, 20 I. & N. Dec. 464, 471 n.3 (BIA 1992)). He was also required to show that "the new evidence [offered] would likely change the result in the case" and that, with the new evidence, he could demonstrate prima facie eligibility for the relief sought in the removal proceedings. Id. (alteration in original) (quoting Matter of Coelho, 20 I. & N. Dec. at 473).

The motion to reopen requested that the BIA remand Escobar's case to the IJ so that the IJ could consider the declaration of proposed expert witness Mneesha Gellman, PhD.

Escobar asserted that he could make the required showing for a motion to reopen because Dr. Gellman's declaration "was not available at the time of [his] merits hearing[,] . . . is material[,] and makes out a prima facie case of eligibility" for his claims. Escobar argued that, if this evidence were considered, he could meet the requirements of the changed-circumstance exception, such that the time bar would not apply, and his claims for asylum, withholding of removal, and protection under the CAT would succeed on the merits.

In her declaration, Dr. Gellman discussed the history of gang violence in El Salvador, the Salvadoran government's response to that violence, the high rates of incarceration, and other country conditions. Dr. Gellman also stated that, during research conducted in El Salvador between December 2023 and January 2024, she found evidence that some Salvadoran citizens were fabricating criminal claims in exchange for cash rewards, and that police and other groups faced pressure to fulfill arrest quotas. Dr. Gellman opined that "it is entirely possible that someone would report" Escobar either for erratic behavior related to his mental illness or to obtain a potential cash reward.

Before the BIA had ruled on Escobar's motion to reopen, Escobar filed a supplement in support of the motion. The supplemental filing related to the declaration of Samuel V. Nickels, PhD. Escobar argued that Dr. Nickels's declaration

constituted "new evidence that alters the outcome of [his] case" and would "confirm[ his] eligibility for asylum, withholding of removal, and protection under the [CAT]."

While Escobar's petition for review was still pending before us, the BIA ruled on Escobar's motion to reopen and denied it. Following the BIA's denial of the motion to reopen, Escobar petitioned for our review of that denial. We consolidated this petition with his pending petition for review of the BIA's ruling affirming the denial of his asylum and withholding of removal claims, as well as his CAT claim.

## II.

Where, as here, the BIA "adopts portions of the IJ's findings while adding its own gloss, we review both the IJ's and the BIA's decisions as a unit." Paiz-Morales v. Lynch, 795 F.3d 238, 242 (1st Cir. 2015) (quoting Renaut v. Lynch, 791 F.3d 163, 166 (1st Cir. 2015)). We apply a substantial-evidence standard to findings of fact by the BIA and the IJ (collectively, the "agency"). Lin v. Mukasey, 521 F.3d 22, 25 (1st Cir. 2008). Under that standard, "the agency's findings are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary of the finding." Id. In undertaking our review, "[w]e review the agency's legal conclusions de novo." Espinoza-Ochoa v. Garland, 89 F.4th 222, 230 (1st Cir. 2023). We review the BIA's denial of a motion to reopen under the "highly deferential

abuse-of-discretion standard." Tay-Chan v. Barr, 918 F.3d 209, 212 (1st Cir. 2019) (quoting Pineda v. Whitaker, 908 F.3d 836, 840 (1st Cir. 2018)). The BIA is given "a fair amount of latitude" in its grant or denial of a reopening request because "a motion to reopen removal proceedings is a disfavored tool, given the threat it poses to finality." Mazariegos v. Lynch, 790 F.3d 280, 285 (1st Cir. 2015). Accordingly, we will uphold the BIA's decision unless it "committed a material error of law or exercised its authority arbitrarily, capriciously, or irrationally." Tay-Chan, 918 F.3d at 212 (quoting Gyamfi v. Whitaker, 913 F.3d 168, 172 (1st Cir. 2019)).

## III.

Escobar filed his motion to reopen with the BIA after he petitioned for review of the BIA's decision that affirmed the denial of his claims for asylum and withholding of removal, as well as his CAT claim, on the merits. We nonetheless address this later-filed petition first. We do so both because we treat it as a motion to remand and consider new evidence, see 8 C.F.R. § 1003.2(c)(4), and because a ruling in his favor on that motion could moot his petition for review of the BIA's affirmance of the denial of his claims on the merits, see 8 U.S.C. § 1252(a)(1) (providing for judicial review of final orders of removal); Lopez-Ruiz v. Ashcroft, 298 F.3d 886, 887 (9th Cir. 2002) ("The BIA's granting of the motion to reopen means there is no longer a

- 14 -

final decision to review."); Romero-Osorio v. Mukasey, 267 F. App'x 87, 87 (2d Cir. 2008) (indicating that after the BIA "granted the motion to reopen, there is no longer a final order of removal for [the Court of Appeals] to review").

## A.

As a threshold matter, 8 U.S.C. § 1158(a)(3) generally "divests courts of jurisdiction to review determinations of timeliness or the applicability of exceptions to the one-year rule" for the filing of asylum applications. Oroh v. Holder, 561 F.3d 62, 66 (1st Cir. 2009). Escobar contends, however, that we do have jurisdiction to consider his petition for review of the BIA's denial of his motion to reopen. We may assume that Escobar is right in so contending, because we conclude that, even if 8 U.S.C. § 1158(a)(3) poses no jurisdictional bar to our conducting such review, the BIA did not err in denying the motion. See Tacuri-Tacuri v. Garland, 998 F.3d 466, 472 (1st Cir. 2021) ("[W]hen statutory jurisdiction is ambiguous but the merits are straightforward, we bypass the jurisdictional issue and explain why the merits hold no water."), abrogation on other grounds recognized by Figueroa v. Garland, 119 F.4th 160, 165 (1st Cir. 2024).

## B.

As a reminder, Escobar premised his motion to reopen on declarations from two proposed expert witnesses: Dr. Gellman and

- 15 -

Dr. Nickels.  We begin with Escobar's arguments about how the BIA erred in denying his motion to reopen insofar as those arguments rest on Dr. Nickels's declaration.

**1.**

Escobar argues that the BIA committed legal error in not finding Dr. Nickels's declaration previously unavailable. According to Escobar, the BIA incorrectly assessed the declaration's availability based on whether the declaration "did not exist in the world" rather than whether Escobar "had no access to the [declaration] at the time of" the hearing.  In pressing this argument, Escobar does not dispute that the hearing before the IJ took place on June 28, 2023, and thus one month after Dr. Nickels's field research trip that concluded in May 2023.  He also acknowledges that Dr. Nickels had "obtained raw data" by the time of the prior merits hearing.  Escobar nonetheless maintains that the BIA erred by not "conduct[ing] a meaningful analysis on whether [Escobar] could have accessed Dr. Nickels'[s] raw data and his opinion" by the time of the merits hearing.  (Emphasis in original).  We disagree.

As the movant, Escobar bore the burden of showing that Dr. Nickels's opinion was unavailable in the month prior to the hearing.  See Benitez v. Wilkinson, 987 F.3d 46, 52 (1st Cir. 2021) ("To prevail on a motion to reopen before the BIA, the movant must show 'new, material evidence that was not available or discoverable

at the prior hearing . . . .'" (quoting Jutus v. Holder, 723 F.3d 105, 110 (1st Cir. 2013))); see also 8 C.F.R. § 1003.2(c)(1) ("A motion to reopen proceedings shall not be granted unless it appears to the [BIA] that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing."). Escobar's brief to the BIA, however, did not offer any explanation as to why Dr. Nickels's opinion -- and thus Dr. Nickels's declaration -- was practically unavailable to him during the period between the research trip and the merits hearing. Accordingly, at least given the record before us and the arguments made to the BIA, Escobar has failed to show that the BIA abused its discretion in denying the motion to reopen insofar as the motion rests on Dr. Nickels's declaration.

**2.**

We also see no basis for concluding that the BIA abused its discretion in denying the motion to reopen insofar as the motion rests on Dr. Gellman's declaration. Many of Escobar's arguments about why that ruling was erroneous merely repeat the legal challenges presented in the merits appeal without addressing how Dr. Gellman's declaration bears on them. These arguments thus fail because they are wholly untethered to any contention regarding the materiality of Dr. Gellman's declaration itself. We thus confine our discussion to the grounds for challenging the BIA's ruling that do not suffer from this fatal defect.

Escobar contends that the BIA abused its discretion in ruling that Dr. Gellman's declaration is not material to the changed-circumstance exception to the one-year time bar because, according to Escobar, the declaration shows that he would face an increased likelihood of being arrested in El Salvador based on his mental illness. The declaration states in the relevant respect, however, only that "it is entirely possible" that he would face that consequence if he were removed. We thus see no abuse of discretion in the BIA's determination "that the added possibility of someone reporting [Escobar] to obtain a cash reward" is insufficient "to trigger the exception to the asylum time bar based on changed country conditions."

Escobar's challenges to the BIA's ruling denying the motion to reopen as applied to his withholding of removal claim and his CAT claim rest on the same contentions about the claimed import of Dr. Gellman's statements regarding the possibility of his future detention. For these challenges, too, however, Escobar fails to show the materiality of Dr. Gellman's declaration to the claims at issue. Thus, the same reasons that led us to conclude that the BIA did not commit reversible error in denying the motion to reopen as to the changed-circumstance exception also lead us to conclude that these challenges fail. For these reasons, we conclude that the BIA did not abuse its discretion in determining

that Dr. Gellman's declaration is not material to Escobar's withholding of removal claim or his CAT claim.

## IV.

We now turn to Escobar's initial petition for review, in which he takes aim at the BIA's ruling affirming the denial of his claims for asylum and withholding of removal, and his claim for CAT protection.  We begin with the portion of this petition for review that concerns Escobar's asylum claims before then addressing the portions of the petition that concern, respectively, his withholding of removal claims and his CAT claim.

## A.

As we have explained, the agency denied Escobar's asylum claims both on the ground that his asylum application was untimely under 8 U.S.C. § 1158(a)(2)(B) and on the ground that, assuming that the claims were timely, the claims lacked merit.  Escobar contends that the agency erred in both respects.

## 1.

We start with Escobar's contention that the BIA erred in concluding that his asylum claims are barred because he did not satisfy either the changed-circumstance or extraordinary-circumstance exception to the one-year time bar for submitting his asylum application.  We begin by addressing a dispute about our jurisdiction to consider this challenge.

- 19 -

The Attorney General contends that we have no jurisdiction to address this challenge. The Attorney General relies on 8 U.S.C. § 1158(a)(3), which, as we noted above, generally "divests courts of jurisdiction to review determinations of timeliness or the applicability of exceptions to the one-year rule" for the filing of asylum applications. Oroh, 561 F.3d at 66.

It is true that Escobar challenges, in part, the agency's factual finding that his mental impairment did not prevent him from filing a petition. But Escobar argues in response to the Attorney General's jurisdictional objection that 8 U.S.C. § 1252(a)(2)(D) "carves out an exception allowing courts to review 'constitutional claims or questions of law,'" id. at 66 (quoting 8 U.S.C. § 1252(a)(2)(D)), and that his challenge falls within the exception because it presents a question of law.

We need not decide whether the jurisdictional bar set out in 8 U.S.C. § 1158(a)(3) applies with respect to Escobar's challenge to the BIA's rejection of his contention that he can satisfy the extraordinary-circumstance exception to the one-year time bar. As we will explain, there is no merit to the challenge and we bypass the jurisdictional issue. See Doe v. Town of Lisbon, 78 F.4th 38, 44-45 (1st Cir. 2023) (holding that, when a case poses a question of statutory, rather than Article III, jurisdiction, "the question of jurisdiction 'need not be resolved if a decision

on the merits will favor the party challenging the court's jurisdiction'" (quoting Akebia Therapeutics, Inc. v. Azar, 976 F.3d 86, 92 (1st Cir. 2020))).

The agency found that, although Escobar's "mental health conditions qualify as a mental disability," he failed to meet the requirements of the extraordinary-circumstance exception based on those conditions. The agency based that finding on the ground that Escobar "did not provide sufficient evidence to meet his burden to show the Court why his delay in filing was reasonable given his disability."

Escobar argues in response that we "should reverse . . . because the undisputed record[] compel[s] the contrary conclusion of the BIA's extraordinary[-]circumstance determination." The problem for Escobar with that contention is that, as the Attorney General points out, Escobar filed his asylum application 18 years after his entry into the United States and 14 years after reaching the age of majority. The Attorney General argues that "these lapses of time were not reasonable" even given Escobar's claimed extraordinary circumstances based on his mental illness. And, at least given what the record shows about Escobar's mental illness and his ability "to work, marry, and have a child during this time," we agree with the Attorney General that the BIA did not commit reversible error in rejecting Escobar's contention

that he satisfied the requirements to demonstrate extraordinary circumstances.

That brings us to the dispute between the parties over whether there is a jurisdictional bar to our considering Escobar's separate challenge to the BIA's denial of his changed-circumstance ground for excusing his failure to satisfy the one-year time bar. We conclude that there is not.

We have previously held that a petitioner raised a reviewable "question of law" where the petitioner's "challenge ask[ed] whether the agency misconstrued a statute . . . in assessing the timeliness of [the petitioner's] asylum application." Lumataw v. Holder, 582 F.3d 78, 86 (1st Cir. 2009). Escobar contends that the agency imposed a requirement under 8 U.S.C. § 1158(a)(2)(D) and 8 C.F.R. § 1208.4(a)(4)(i) that an applicant claiming changed circumstances cannot have been eligible for asylum prior to the change in circumstances, even though there is no such requirement. Thus, Escobar is arguing that the agency "applied the wrong changed[-]circumstance standard" in deciding that "no changed[-]circumstance exception could have applied to [his asylum application] solely because [he] would have already been eligible for asylum . . . at the time of his entry to the United States in 2004." We agree with Escobar that this challenge raises a question of law and thus that we have jurisdiction to

review the challenge.  See Wilkinson v. Garland, 601 U.S. 209, 212 (2024).

## 2.

As for the merits of Escobar's challenge to the agency's changed-circumstance ruling, Escobar concedes that a changed circumstance must "materially affect the applicant's eligibility for asylum."  8 U.S.C. § 1158(a)(2)(D); see 8 C.F.R. § 1208.4(a)(4)(i).  But he argues that there is "no requirement that [the applicant] can invoke [the] exception only when he has . . . become eligible for asylum on any ground for the first time."  Instead, Escobar contends that:

> even if an asylum applicant [were] already eligible for asylum . . . at the time of entry [into] the United States and failed to pursue his asylum protection on that basis within one year of his entry, the changed[-]circumstance exception allows him to pursue asylum on a different or [the] same basis after the one-year deadline.

Escobar goes on to contend that the IJ erroneously ruled otherwise and that the BIA then affirmed that ruling solely based on that legally flawed ground.  Thus, Escobar argues that the agency erred as a matter of law in rejecting his contention that he had satisfied the changed-circumstance exception, such that his application was not properly deemed untimely.

Although the issue Escobar raises is one of first impression in our court, every circuit to have examined the issue

has concluded, like the Sixth Circuit in Mandebvu v. Holder, that 8 U.S.C. § 1158(a)(2)(D) does not impose the requirement that we understand the agency to have imposed in Escobar's case.  755 F.3d 417, 426 (6th Cir. 2014) (concluding that the agency had erred as a matter of law by requiring that "an asylum applicant, in order to excuse a delay in filing beyond the one-year deadline, demonstrate that he would not have been eligible for asylum had he applied before the change"); accord Zambrano v. Sessions, 878 F.3d 84, 88 (4th Cir. 2017) ("New facts that provide additional support for a pre-existing asylum claim can constitute a changed circumstance."); Weinong Lin v. Holder, 763 F.3d 244, 248-49 (2d Cir. 2014) (finding that further evidence of an existing asylum claim may constitute changed circumstances); Singh v. Holder, 656 F.3d 1047, 1053 (9th Cir. 2011) (holding changed circumstances may include events that make stronger an application for a previously existing asylum claim); Vahora v. Holder, 641 F.3d 1038, 1044 (9th Cir. 2011) (rejecting the agency's interpretation of the exception that "requir[ed] the applicant to show that, prior to the change in circumstances, the applicant could not have filed a meritorious application"); Fakhry v. Mukasey, 524 F.3d 1057, 1063 (9th Cir. 2008) ("[T]here can be 'changed circumstances which materially affect the applicant's eligibility for asylum' even if the alien always meant to apply for asylum and always feared

persecution . . . ."). Moreover, in explaining that conclusion, the Sixth Circuit persuasively observed:

> There is nothing in the plain language of the statute that requires an applicant to show that he was ineligible for asylum when he arrived in the United States before he can take advantage of "changed circumstances" to extend the deadline for filing an application. The changed circumstances must "materially affect the applicant's eligibility for asylum," but it is not evident that a changed condition that strengthens an applicant's already existing claim for asylum categorically fails to have such a material effect.

Mandebvu, 755 F.3d at 426-27 (quoting 8 U.S.C. § 1158(a)(2)(D)).

In addition, we note that the Ninth Circuit in Vahora, after reviewing in detail the relevant legislative history to 8 U.S.C. § 1158(a)(2)(D), concluded that "[t]he narrow interpretation of the changed[-]circumstances exception urged by the IJ and BIA . . . would turn what Congress intended completely on its head." 641 F.3d at 1045. And, in Matter of D-G-C-, the BIA itself impliedly accepted that the changed-circumstance exception could be met where an applicant who had a preexisting basis for claiming asylum "raise[s] a claim for asylum . . . on the basis of a newly articulated claim of future persecution." 28 I. & N. Dec. 297, 301 (BIA 2021).

We note, too, that the Attorney General makes no argument to us that we should adopt an interpretation of 8 U.S.C. § 1158(a)(2)(D) that is contrary to the interpretation of it that

our sister circuits have embraced. Rather, the Attorney General contends only that Escobar "misconstrues the [BIA]'s decision" because the BIA in fact rejected Escobar's changed-circumstance ground for concluding that the time bar is inapplicable only for fact-based reasons that were unrelated to whether he was initially eligible for asylum based on his grandmother's mistreatment. But we cannot agree with that contention about what the BIA held.

We understand the BIA, in "affirm[ing] the [IJ's] conclusion that the respondent's asylum application is time-barred," to have adopted the IJ's sole rationale for rejecting Escobar's ground for contending the changed-circumstance exception applied. See Hasan, 673 F.3d at 33 ("[T]o the extent that the BIA deferred to or adopted the IJ's reasoning, we review those portions of the IJ's decision as part of the final decision of the BIA." (quoting Bonilla v. Mukasey, 539 F.3d 72, 76 (1st Cir. 2008))). And the IJ's opinion demonstrates that its sole rationale for concluding that Escobar's mental health condition did not constitute a changed circumstance that "materially affect[ed] his eligibility for asylum" was that Escobar previously "would have been eligible to apply for asylum" on a different basis.[4]

_____

[4] Although the BIA began its analysis of the time-bar issue by stating that "[t]he respondent must show that he filed his asylum application within a reasonable period given the asserted changed and extraordinary circumstances," this recitation of the statutory requirement does not suffice to show that the BIA

- 26 -

We also note that, on this record, "we are unable confidently to conclude that had the agency conducted the proper timeliness analysis, it would not have found" that the changed-circumstance exception applied to Escobar's untimely asylum application. Lumataw, 582 F.3d at 90. After all, the record shows that Escobar filed his application for asylum in April 2022, and that the application, as amended in August 2022, claimed that he was eligible for asylum as a member of a PSG defined as "Salvadorans with unspecified schizophrenia spectrum and other psychotic disorders who exhibit erratic behavior." And the record not only shows that Escobar testified that he was not "clearly diagnosed" with schizophrenia until January 2022, but also contains a report prepared by a psychiatrist who evaluated Escobar in August 2022 and diagnosed him with, among other disorders, "Unspecified Schizophrenia Spectrum and Other Psychotic Disorder."

Nor can we deem the agency's error as to the timeliness of the asylum claims harmless based on the agency's independent

---

affirmed the IJ's denial of the applicability of the changed-circumstance exception based on Escobar's delay having been unreasonable and not because his prior eligibility for asylum precluded him from showing changed circumstances. Moreover, the BIA noted it would "not disturb the [IJ's] finding that the respondent's filing of his asylum application over 14 years after attaining the age of majority was unreasonable," (emphasis added), and the only IJ finding as to the reasonableness of the delay concerned the extraordinary-circumstance exception, as the IJ made no such finding as to the changed-circumstance exception.

ruling rejecting the merits of Escobar's asylum claims. Escobar contends that independent ruling is itself flawed. He contends that is so because "the IJ failed to address [his allegation of] future persecution by gangs on account of his mental illness" and that the BIA then erred in determining that, "[g]iven the [IJ's] reference to '[Escobar's] persecutors'" in disposing of his mental illness-based future persecution claim, the IJ did in fact consider potential future persecution by gang members. Escobar's contention in this regard rests on the assertion that the IJ's analysis concerning "the lack of resources for mental health care in El Salvador" -- a topic on which the IJ did focus in discussing "Escobar's persecutors" -- "has no logical connection to the question of whether gang members would harm him on account of his mental health disability."[5] (Emphasis omitted).

The Attorney General does respond that Escobar's argument on this point "is uncompelling because, as the [BIA] stated, the [IJ] . . . properly considered the prospect of harm perpetrated by the numerous and varied parties [Escobar]

---

[5] Escobar argues before us that if he could show the extraordinary-circumstance or changed-circumstance exception applies to any one of his claims, the time bar that would otherwise preclude consideration of his asylum application would not apply such that all his asylum claims, including even those for which no extraordinary or changed circumstances had been shown, could be considered. For this last proposition, Escobar points to Yan Yang v. Barr, 939 F.3d 57, 61-62 (2d Cir. 2019). As we do not determine whether Escobar has satisfied the requirements of either exception, we do not reach this issue.

identified, including gangs, where [the IJ] referenced Escobar's 'persecutors' in the plural." And while the Attorney General concedes that the IJ "did not expressly identify the perpetrators or source of such killings within the confines of his withholding determination" and that the decision was "not of ideal clarity," the Attorney General argues that "it is readily discernable from the [IJ's] decision that he duly considered Escobar's professed fear of harm by gangs."

The Attorney General's response fails to show that the agency's legal error in evaluating the applicability of the changed-circumstance exception was harmless. There is no indication that the IJ, in finding that "there is insufficient evidence to establish that [Escobar's] persecutors would be motivated to harm him on account of his [mental health issues]," intended "persecutors" to include Salvadoran gangs. Indeed, even though Escobar advanced the argument that he may face future persecution by gang members on account of his mental illness, nothing in the agency's decisions indicates that the claim was considered.

Thus, having reviewed the IJ's and BIA's decisions on the merits of Escobar's asylum claims, we are not convinced that the agency "ma[de] findings, implicitly if not explicitly, on all grounds necessary for decision," as it is required to do. Un v. Gonzales, 415 F.3d 205, 209 (1st Cir. 2005). Accordingly, we

- 29 -

vacate and remand the BIA's ruling denying the asylum application. We emphasize, however, that we express no view on the ultimate merits of the issues that remain in dispute on remand.[6]

## B.

We move on to address the portion of Escobar's initial petition for review that concerns his claims for withholding of removal. Our work here is more straightforward.

"The agency denied [Escobar's] claim for withholding of removal on the ground that the standard for demonstrating entitlement to such withholding is higher than the standard for demonstrating entitlement to asylum and thus that because [Escobar] failed to show the latter he also failed to show the former." Pineda-Maldonado v. Garland, 91 F.4th 76, 90 (1st Cir. 2024). But, as we have just explained, the agency erred in disposing of Escobar's mental health-based asylum claims. Thus,

---

[6] We note that, notwithstanding our affirming the BIA's denial of Escobar's motion to reopen, the agency has discretion to admit relevant, material evidence that was not available at the prior merits hearing. Viknesrajah v. Lynch, 620 F. App'x 28, 31 (2d Cir. 2015) ("[T]he [IJ] has authority to consider additional evidence if it is material, was not previously available, and could not have been discovered or presented at the former hearing." (second alteration in original) (quoting Matter of M-D-, 24 I. & N. Dec. 138, 141 (BIA 2007))); Fernandes v. Holder, 619 F.3d 1069, 1074 (9th Cir. 2010) (holding that an IJ has authority to consider new evidence on remand so long as the IJ is not prevented from doing so by the remand order); Manguriu v. Lynch, 794 F.3d 119, 123 (1st Cir. 2015) ("[R]emand is necessary so that the BIA, either directly or through a further remand to the [IJ], may gather any available evidence relevant to the . . . inquiry . . . .").

"because the agency provided no other justification that could suffice to sustain [the] denial" of Escobar's related withholding of removal claims beyond its disposition of his asylum claims, we grant Escobar's petition for review of the agency's denial of these withholding of removal claims. Id.

## C.

The final portion of Escobar's initial petition for review that we must consider concerns Escobar's challenge to the agency's denial of his claim for CAT protection. As a reminder, Escobar premises his CAT claim on three potential "sources of torture": Salvadoran authorities, Salvadoran gangs, and Salvadoran medical workers. The agency denied the CAT claim on the ground that Escobar failed to show that he more likely than not would be tortured in El Salvador by or with the acquiescence of the government. Escobar contends that the agency erred in doing so because the agency misapplied the acquiescence standard and failed to apply the aggregate standard under which, he contends, he has shown what he must to be eligible for CAT protection. We are not persuaded that the agency misapplied the acquiescence standard. We nonetheless vacate and remand so that the agency may assess the applicability of the aggregate standard in the first instance. See Velerio-Ramirez v. Lynch, 808 F.3d 111, 117 (1st Cir. 2015) ("[W]hen the BIA has not spoken on an issue that a statute has

placed in its hands, remand is appropriate to give the BIA an opportunity to address the issue in the first instance.").

## 1.

Under 8 C.F.R. § 1208.18(a)(1), an individual is eligible for CAT protection only if he or she faces torture "by or with the acquiescence of a government official." Lafortune v. Garland, 110 F.4th 426, 438 (1st Cir. 2024) (emphasis added) (quoting Nako v. Holder, 611 F.3d 45, 50 (1st Cir. 2010)). Escobar argues that the agency erred by "requir[ing him] to establish the acquiescence prong of CAT for the possibility of torture by the Salvadoran authorities" even though "[t]he acquiescence prong is only needed for non-state[-]actor[-]based CAT claims." In other words, Escobar alleges that the agency erred by requiring him to prove "acquiescence" of the Salvadoran government for torture committed by the Salvadoran government.

This contention rests on a mistaken understanding of the BIA's ruling as to his CAT claim. The BIA affirmed the IJ's determination "that [Escobar] has not shown that a public official more likely than not would acquiesce in 'torture' of him within the meaning of the regulations." It is clear from context that this determination refers specifically to the risk of torture from gangs. The sentence prior to this finding explains why the IJ found that the risk of torture from Salvadoran authorities did not provide grounds for Escobar's CAT protection claim, and the

- 32 -

sentence following this finding explains why the agency found the threat of torture from mental health professionals also failed to provide grounds for Escobar's CAT protection claim. Moreover, to offer support for the determination that Escobar had failed to meet his burden on acquiescence, the BIA cited Romilus v. Ashcroft for the proposition that "an applicant for [CAT protection] must demonstrate that any torture he will suffer would be at the hands of the government or with the consent or acquiescence of the government." 385 F.3d 1, 8 (1st Cir. 2004).

The structure of the IJ's ruling -- which was upheld by the BIA -- reinforces our conclusion about the proper way to understand the basis for the BIA's ruling. The IJ addressed the "sources of torture" in separated paragraphs: first addressing the risk of torture by Salvadoran authorities, next the risk posed by gangs, and lastly the risk posed by medical workers. The IJ only required that Escobar prove the government's acquiescence in his torture by gangs.

Thus, we conclude that the BIA addressed, one at a time, Escobar's three "sources of torture" and only required a showing of governmental acquiescence for the risk of torture by gangs. As a result, we see no merit in Escobar's first ground for challenging the BIA's denial of his CAT claim.

**2.**

Escobar's next contention is that the agency failed to consider the evidence of the risk of torture in aggregate, "and not as separate, divisible" risks. Matter of J-R-G-P-, 27 I. & N. Dec. 482, 484 (BIA 2018) (quoting Quijada-Aguilar v. Lynch, 799 F.3d 1303, 1308 (9th Cir. 2015)). Escobar characterizes the agency's allegedly separated treatments of the sources of torture as a "fail[ure] to apply the aggregate standard." Escobar contends that the agency treated the three risks of torture "separately" and that "nothing in [the agency's] decisions reflects that [the agency] applied the aggregate standard." Escobar acknowledges that we have not previously ruled on the applicability of the aggregate standard and argues that we should adopt the standard, as other circuits have, and apply it here.

The Attorney General appears to disagree, contending that "the agency's decision reflects that it duly considered the risk of harm from all the various sources Escobar identified and found it insufficient to establish the requisite likelihood of persecution, much less torture."[7]  However, while the agency may

---

[7]  Escobar asserts that, regarding the IJ's failure to apply the aggregate standard, he "contended this issue before the BIA." Although it is not clear to us that Escobar did so contend, the Attorney General does not argue to us that Escobar failed to exhaust his argument on this ground and thus we proceed to the merits. See Santos-Zacaria v. Garland, 598 U.S. 411, 423 (2023) (holding non-jurisdictional exhaustion rules are "subject to waiver and forfeiture").

have considered, as the Attorney General observes, the risk of torture posed by "the various sources," the decision does not show in any clear way that the agency considered these risks together. With respect to each source of torture, the BIA did find that Escobar had not shown that he more likely than not would face torture from that source. But the BIA did not explicitly consider whether Escobar could show that, if the risk from each source were combined, it is more likely than not that he would be tortured.

Of course, the lack of clarity in this regard only matters if the aggregate standard must be applied and that application could yield a finding that Escobar would be more likely than not subject to torture in El Salvador. We are aware that several of our sister circuits have adopted this standard, sometimes calling it the "aggregate risk legal standard." See Nyandwi v. Garland, 15 F.4th 836, 839 (7th Cir. 2021); Kamara v. Att'y Gen., 420 F.3d 202, 213-14 (3d Cir. 2005); Quijada-Aguilar v. Lynch, 799 F.3d 1303, 1308 (9th Cir. 2015), abrogation on other grounds recognized by United States v. Draper, 84 F.4th 797, 805 n.3 (9th Cir. 2023); Rodriguez-Arias v. Whitaker, 915 F.3d 968, 972-73 (4th Cir. 2019); Abdi Omar v. Barr, 962 F.3d 1061, 1065 (8th Cir. 2020). But, as Escobar acknowledges, we have not decided whether a claim for CAT protection must adhere to the aggregate standard.

Here, the Attorney General has not disputed the applicability of the standard. The agency itself, however, has not passed on the question of the aggregate standard's applicability in this case, let alone how Escobar's CAT claim would fare under it. Thus, we find it prudent to provide the agency the opportunity to assess the scope and applicability of the aggregate standard in the first instance, including any questions of exhaustion or waiver that may be in play. See Rosa v. Garland, 114 F.4th 1, 25 (1st Cir. 2024) ("Though the parties' briefs before us argue the merits of the challenge . . . we decline to reach that issue before the BIA has ruled on it in the first instance."); see also Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944); H.H. v. Garland, 52 F.4th 8, 24 n.21 (1st Cir. 2022) (ruling on noncitizen's CAT claim without reaching arguments that the BIA "failed to aggregate all potential sources of torture"). Accordingly, we vacate the denial of Escobar's CAT claim and remand for further proceedings to enable the parties to develop the relevant issues and to allow the agency to assess the applicability of this standard in the first instance.

## V.

For the foregoing reasons, we **affirm** the denial of Escobar's motion to reopen. We also **grant** Escobar's petition for judicial review of the agency's decision. We **remand** the petition

as it relates to Escobar's claims for asylum, withholding of removal, and protection under the CAT.